### DAVID M. SOMERS *v.* JOHN M. CHAN
### (AC 29033)

Flynn, C. J., and Gruendel and Harper, Js.

---

512

Argued May 22—officially released September 30, 2008

*William J. O'Sullivan*, for the appellant (plaintiff).

*Opinion*

GRUENDEL, J. This is the latest in a series of lawsuits pursued by the plaintiff, David M. Somers, to collect an amount allegedly owed by the defendant, John M. Chan. In this appeal, we must decide whether the trial court correctly determined that the defendant was not liable for legal fees of $75,000 allegedly incurred by Lynn Chan, the defendant's former wife, and claimed by the plaintiff, her former attorney, to be due from the defendant by virtue of her assignment to the plaintiff of a lump sum alimony award. Exercising our supervisory power over the administration of justice, we affirm in part and reverse in part the judgment of the trial court.

## I

## BACKGROUND

The tortured history of the present litigation is a tangled web.[1] It nevertheless requires substantial discussion.

---

[1] Due to the complexity of the multiple proceedings pertinent to the present appeal, we briefly outline each at the outset.

1. *Lynn Chan* v. *John Chan*, Docket No. FA-93-0525491-S, dissolution action decided by *Barall, J.*, and *Dranginis, J.* The plaintiff represented Lynn Chan in that action.

2. *David M. Somers* v. *Lynn Chan*, Docket No. CV-02-0818041-S, action to collect legal fees that resulted in the stipulated judgment rendered by *Beach, J.*

3. *David M. Somers* v. *Lynn Chan*, Docket No. CV-02-0818041-S, plaintiff's motion for turnover order against John Chan dismissed by *Sheldon, J.*

4. *David M. Somers* v. *John M. Chan*, Docket No. CV-04-4001343-S, foreclosure of judgment lien action dismissed by *Keller, J.*

A

## The Dissolution Action

In 1993, Lynn Chan commenced a dissolution action against the defendant. The plaintiff represented her throughout the course of that action.[2] As the court noted when fashioning its financial orders, "the actions of the parties and [the plaintiff] in the court system took a rather simple case and made it a cause celebre. Few issues of significance to the public were decided, and the parties and counsel all lost in the process. The court process did not function to minimize the contest, and the parties were allowed to follow through on the most trivial of pursuits. This was not a long-term marriage, and the parties had no children. They have simple assets, and the protracted dispute was well out of proportion to need or importance." The case was bifurcated, and, on April 11, 1997, the court, *Barall, J.*, rendered judgment of dissolution. In the next two years, a series of motions, discovery contests and assignments for hearing followed, and a trial ultimately was held on the financial issues.

After the court rendered the judgment of dissolution but prior to its resolution of the financial issues, the plaintiff prepared a promissory note (note) that Lynn Chan signed on September 3, 1997.[3] The note provided

5. *David M. Somers* v. *John M. Chan*, Docket No. CV-06-5003525-S, action to collect alimony assigned pursuant to stipulated judgment before *Hon. Richard M. Rittenband*, judge trial referee, whose judgment now is appealed.

[2] The trial court in the present case found that Lynn Chan never appeared in court for any of the proceedings listed in footnote 1 and that the plaintiff never met her in person. During the dissolution proceeding, her testimony was by deposition in Arizona with local counsel. The court also found that Lynn Chan had some trouble with the English language. The plaintiff has not challenged those findings on appeal.

[3] Lynn Chan had signed a similar promissory note in the amount of $118,000 several months earlier, which the plaintiff also prepared. That note was superseded by the September 3, 1997 note.

in relevant part: "For value received [Lynn Chan] promises to pay [the plaintiff] the principal amount of $156,872, with interest previously accrued . . . at the rate of 12 percent per annum for legal fees, costs and interest per the retainer agreement . . . . This debt shall be repaid in full by note maker upon judicial award, transfer, sale, refinancing or foreclosure of this note maker's interest in real estate [in Avon, Connecticut, and Phoenix, Arizona] . . . . This debt shall not be collected from the future income of [Lynn Chan] and is intended to be paid in lump sum from [her] dissolution of marriage proceedings against [the defendant] to final judgment." The note further provided that the plaintiff "is providing *no legal advice or representation* to [Lynn Chan] as a part of this transaction." (Emphasis in original.) Additionally, the plaintiff appended to the note copies of rules 1.7 and 1.8 of the Rules of Professional Conduct.[4] Likewise, the note

[4] Rule 1.7 of the Rules of Professional Conduct, as in effect in 1997, provides: "Conflict of Interest: General Rule

"(a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:

"(1) The lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and

"(2) Each client consents after consultation.

"(b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:

"(1) The lawyer reasonably believes the representation will not be adversely affected; and

"(2) The client consents after consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved."

Rule 1.8 of the Rules of Professional Conduct, as in effect in 1997, provides: "Conflict of Interest: Prohibited Transactions

"(a) A lawyer shall not enter into a business transaction with a client or former client or knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to a client or former client unless:

"(1) The transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client or former client and are fully disclosed and transmitted in writing to the client or former client in a manner which

stated that Lynn Chan was "advised of and provided full

can be reasonably understood by the client or former client;

"(2) The client or former client is advised in writing that the client or former client should consider seeking the advice of independent counsel in the transaction and is given a reasonable opportunity to do so;

"(3) The client or former client consents in writing thereto; and

"(4) With regard to a business transaction, the lawyer advises the client or former client in writing either (i) that the lawyer will provide legal services to the client or former client concerning the transaction, or (ii) that the lawyer will not provide legal services to the client or former client and that the lawyer is involved as a business person only and not as a lawyer representing the client or former client and that the lawyer is not one to whom the client or former client can turn for legal advice concerning the transaction.

"(b) A lawyer shall not use information relating to representation of a client to the disadvantage of the client unless the client consents after consultation.

"(c) A lawyer shall not prepare an instrument giving the lawyer or a person related to the lawyer as parent, child, sibling, or spouse any substantial gift from a client, including a testamentary gift, except where the client is related to the donee.

"(d) Prior to the conclusion of representation of a client, a lawyer shall not make or negotiate an agreement giving the lawyer literary or media rights to a portrayal or account based in substantial part on information relating to the representation.

"(e) A lawyer shall not provide financial assistance to a client in connection with pending or contemplated litigation, except that:

"(1) A lawyer may pay court costs and expenses of litigation on behalf of a client, the repayment of which may be contingent on the outcome of the matter;

"(2) A lawyer representing an indigent client may pay court costs and expenses of litigation on behalf of the client.

"(f) A lawyer shall not accept compensation for representing a client from one other than the client unless:

"(1) The client consents after consultation;

"(2) There is no interference with the lawyer's independence of professional judgment or with the client-lawyer relationship; and

"(3) Information relating to representation of a client is protected as required by Rule 1.6.

"(g) A lawyer who represents two or more clients shall not participate in making an aggregate settlement of the claims of or against the clients, or in a criminal case an aggregated agreement as to guilty or nolo contendere pleas, unless each client consents after consultation, including disclosure of the existence and nature of all the claims or pleas involved and of the participation of each person in the settlement.

"(h) A lawyer shall not make an agreement prospectively limiting the lawyer's liability to a client for malpractice unless permitted by law and the

and fair opportunity to seek the advice of independent counsel" and that she "fully consents to this arrangement with [the plaintiff] . . . the terms of which are fully disclosed and understood, and which [she] considers to be fair and reasonable."

On May 14, 1999, the court, *Dranginis, J.*, issued a memorandum of decision in the dissolution action, in which it found that "the cause of the breakdown of this marriage was the bigamous marriage of [Lynn Chan] to one Grady Bloodworth. . . . [H]er conduct was the principal cause of the breakdown of the marriage." The court also addressed the validity of the attorney's fees billed to Lynn Chan, on which she sought a court award against the defendant. The court found that the plaintiff's fees totaled roughly one quarter of a million dollars. The court continued: "[T]he court is of the opinion that the fees far exceeded what was the reasonable value of the case, in light of the circumstances of the assets of the marriage. . . . [C]ounsel continued to engage in proceedings with the defendant, which had little if any practical or legal value for the ultimate issues which are at the core of this litigation. . . . If the legal fees claimed are paid, there will be no marital assets for the parties. [Lynn Chan] has been absent for the bulk of this litigation, and it appears that [the

client is independently represented in making the agreement, or settle a claim for such liability with an unrepresented client or former client without first advising that person in writing that independent representation is appropriate in connection therewith.

"(i) A lawyer related to another lawyer as parent, child, sibling or spouse shall not represent a client in a representation directly adverse to a person who the lawyer knows is represented by the other lawyer except upon consent by the client after consultation regarding the relationship.

"(j) A lawyer shall not acquire a proprietary interest in the cause of action or subject matter of litigation the lawyer is conducting for a client, except that the lawyer may:

"(1) Acquire a lien granted by law to secure the lawyer's fee or expenses; and

"(2) Contract with a client for a reasonable contingent fee in a civil case."

plaintiff] and the defendant developed a contested relationship of their own. The defendant examined [the plaintiff] on the validity of his bill at length. It was clear from the testimony that [the plaintiff] billed each and every interaction with [Lynn Chan] and the defendant, and it was also clear that the level of conflict in this action was high. What is incumbently [sic] clear, however, is that the matter was overly litigated, to the extent that the claim for attorney's fees, if paid, would diminish the value of the marital estate by more than one half. . . . The reasonableness of the bill to [Lynn Chan], for which [she] seeks reimbursement from the defendant as part of the distribution of marital assets, must be assessed with respect to the attorney-client relationship between [Lynn Chan] and counsel. For counsel to continue to engage the defendant, who was not willing to agree to very much in the matter, worked to the detriment of his client. This court cannot countenance or approve of a bill for services rendered in a case which asks for compensation which equals more than one half of the entire marital estate."

The court thereafter entered certain financial orders that provided, inter alia, that (1) "[t]he defendant shall pay to [Lynn Chan] as lump sum alimony the sum of $75,000, in payments of no less than $15,000 per year for five (5) years. Nothing in this order should prevent the defendant from discharging this debt prior to the expiration of five (5) years"; (2) the interest in the marital home in Avon (Avon property) was to be transferred by operation of law to the defendant, and the lis pendens placed thereon by the plaintiff was to be released in light of the finding that his "fees charged are unconscionable and unenforceable"; and (3) Lynn Chan "shall be responsible for her own attorney's fees. She must bear some responsibility for the extent of litigation which spawned this huge bill, and it appears

that [the defendant] copied the tactics of her counsel to keep the parties in court."

Three months later, the plaintiff was disbarred from the practice of law in the state of Connecticut as a result of his conduct in unrelated proceedings.

## B

### The Plaintiff's Civil Action Against Lynn Chan

After enlisting the counsel of attorney Gary J. Greene, the plaintiff commenced a civil action against Lynn Chan to collect the attorney's fees allegedly due from the dissolution proceeding. Despite the fact that Judge Dranginis had declared his quarter of a million dollar fee unreasonable, unconscionable and unenforceable, the plaintiff's complaint sought to recover more than $250,000 in legal fees.[5] Lynn Chan was not represented by counsel in that proceeding.

A series of informal communications between Lynn Chan and Greene followed. On May 21, 2002, in a handwritten note, Lynn Chan stated: "If there is some debt, alimony never paid from [the defendant] is an avenue. I'm disabled and have no assets." Greene then drafted a stipulation agreement, which he mailed to Lynn Chan in Arizona and requested her signature. Lynn Chan again replied by way of handwritten letter, in which she expressed confusion over the terms of the agreement and insisted that she be released from all liability irrespective of whether the stipulation ultimately was approved by the court. She stated: "Releasing me of all legal liability if the court *did not approve* was also to be incorporated into the letter we discussed and signed by [the plaintiff] and yourself. . . .

---

[5] In the spring of 2000, the plaintiff sent Lynn Chan a statement of "payments received and outstanding balance," which indicated that the outstanding balance as of May, 2000, was more than $330,000.

"My signed release gives you the authority to proceed against [the defendant] as you stated in your August 16 letter and our Sep[tember] 3, [20]02 discussion. If you want the opportunity to collect [payment] from [the defendant] do it! No more word games—you'll have my signed release after I receive a signed letter from [the plaintiff] and yourself reflecting my needs indicated in my fax and this letter. . . .

"Simplify this by doing these 'basics' so you can enter this into court and get your money from [the defendant]. Remember, I get nothing, Mr. Somers, and *forever* leave me alone." (Emphasis in original.) By letter dated October 29, 2002, Greene assured Lynn Chan that the stipulation agreement would "relieve you of all liability to [the plaintiff] in perpetuity."

Greene repeated that assurance in his November 12, 2002 letter to Lynn Chan. He wrote: "To confirm our telephone conversation of September 3, 2002 as well as in regards to your letter which was received in this office on September 30, 2002, please accept this letter as an indication that David M. Somers & Associates, P.C., its successors and/or assigns or any of its members and/or [the plaintiff] personally will not proceed against you for any of the funds that may be due and owing to David M. Somers & Associates, P.C., once the stipulation is signed by yourself.

"It is the intention of this letter to indicate that under no circumstances will Lynn Chan be personally responsible for the outstanding debt due and owing to David M. Somers & Associates, P.C., and that your signature on the stipulation will authorize David M. Somers & Associates, P.C., to proceed against [the defendant] for the outstanding debt and to proceed against him for these funds out of the alimony that is owed to yourself.

"It is the intention of this letter to assure you that no further action will be taken on behalf of David M.

Somers & Associates, P.C., to collect any funds due and owing from yourself once the stipulation is signed by yourself and returned to this office."

Lynn Chan eventually signed the stipulated agreement. It provided: "The parties in the above matter hereby stipulate that judgment shall enter in favor of the plaintiff . . . in the principal amount of $156,872.00, plus interest from September 3, 1997 through September 3, 2002, in the amount of $94,115.25, plus attorney's fees in the amount of $1,000 plus costs in the amount of $261.45 for a total due and owing of $252,248.70. The parties stipulate that the sum shall be recoverable only from [the defendant] and the alimony that is due and owing from [the defendant] to [Lynn Chan]." Approximately one month later, Lynn Chan sent an additional communication to Greene. Stapled to that document was a small piece of paper that read, "For attorney Greene & [the plaintiff]. Possibly this can help you with your upcoming case." The document itself stated: "To Whom it Concerns: Per this date I have never received any alimony [payments] from [the defendant] from the court order in the memorandum of decision re: dissolution financial orders dated May 14, 1999.

"[The defendant] has been in default of this court order and other orders.

"Lynn Chan.

"December 4, 2002."[6]

On December 26, 2002, Greene filed with the court a "motion for judgment in accordance with stipulation." On January 13, 2003, the court, *Beach, J.,* summarily granted the plaintiff's motion. As the court in the present case found, "[t]here is no evidence that Judge Beach was advised of Judge Dranginis' decision that

---

[6] The aforementioned communications between Lynn Chan and Greene were admitted into evidence in the present action.

the legal fees were unenforceable. There is nothing in the file indicating that [the plaintiff] or his attorney . . . advised Judge Beach of Judge Dranginis' decision. Judge Beach's approving the stipulation in a collection matter was a nonarguable motion, which Judge Beach had no reason to question."

C

The Plaintiff's First Civil Action Against The Defendant

Armed with that stipulated judgment, the plaintiff filed a judgment lien on the defendant's Avon property. On August 19, 2003, the plaintiff filed a "motion for turnover order" that stated: "The [p]laintiff obtained a judgment against [Lynn Chan] on January 13, 2003. . . . On or about May 29, 2003, [s]tate [m]arshal Abraham Glassman served a property execution upon [the defendant] who holds funds that belong to [Lynn Chan]. [The defendant] has refused and/or neglected to [turn over] the funds that are owed to [Lynn Chan] to the marshal. Wherefore, for the foregoing reasons it is requested that an order enter ordering [the defendant to turn over] any funds that are due and owing to [Lynn Chan] to the [s]tate [m]arshal." By memorandum of decision dated March 3, 2004, the court, *Sheldon, J.*, concluded that the plaintiff's motion was legally deficient, as it did not comply with General Statutes § 52-356b. The court, therefore, denied the motion without prejudice.

D

The Plaintiff's Second Civil Action Against The Defendant

On July 27, 2004, the plaintiff commenced an action against the defendant to foreclose the judgment lien and filed a notice of lis pendens against the Avon property. After two days of trial, the plaintiff moved to withdraw that action. The court, *Keller, J.*, granted a

conditional approval of that motion, stating that withdrawal was "approved on April 18, 2006, during court trial, provided the plaintiff files releases of the judgment lien and lis pendens with the town clerk of Avon on or before Friday, April 21, 2006, at 12 p.m., and the plaintiff must provide [the defendant] with a copy of such proof of recordation per order of the court." There is no indication in the record that the plaintiff failed to comply with that order.

E

## The Plaintiff's Third and Present Civil Action Against The Defendant

Undaunted, the plaintiff commenced another civil action against the defendant on April 17, 2006. His two page complaint averred that the defendant "is indebted to the plaintiff in the amount of the alimony that is due and owing of $75,000."[7] In response, the defendant, appearing pro se, filed a counterclaim[8] against the plaintiff. That pleading alleged that the plaintiff's action constituted vexatious litigation, as Judge Dranginis already

---

[7] The complaint alleged in full: "[The] [p]laintiff is an individual residing in the [t]own of Avon, [c]ounty of Hartford, [s]tate of Connecticut. . . . [The] [d]efendant is an individual residing in the [t]own of Avon, [c]ounty of Hartford, [s]tate of Connecticut. . . . On or about January 13, 2003, judgment entered in the Hartford Superior Court under docket number CV02 0818041 in favor of the plaintiff and against [Lynn Chan] in the amount of . . . $252,248.70. . . . As part of that judgment, [Lynn Chan] assigned all her interest in the alimony that is due and owing from [the defendant] to [Lynn Chan] pursuant to the divorce decree between [the defendant] and [Lynn Chan]. . . . The defendant is indebted to the plaintiff in the amount of the alimony that is due and owing of . . . $75,000. . . . The defendant has notice of the [a]ssignment but has refused and/or neglected to pay the amount due and owing to the plaintiff. Wherefore, the [p]laintiff [c]laims . . . [d]amages; including interest, late charges and costs of collection . . . [a]ttorney's [f]ee [and] [s]uch other and further relief as may be required."

[8] Although the defendant captioned his responsive pleading a cross complaint, the rules of practice label the supplemental pleading filed by a defendant against a plaintiff a counterclaim. See Practice Book § 10-10. We refer in this opinion to the defendant's cross complaint as a counterclaim.

had determined that he was not liable for the legal fees incurred by Lynn Chan during the dissolution proceeding. He emphasized that Judge Dranginis had found the plaintiff's legal fees to be unconscionable and unenforceable. The defendant further maintained that his alimony obligation "was satisfied and was terminated in the Superior Court at Hartford in the [f]amily [c]ourt as ordered by Judge Prestley on October 27, 2004."[9] He appended a copy of that court order to the counterclaim. As to the stipulated judgment entered into by the plaintiff and Lynn Chan, the defendant alleged that its procurement, as well as the resulting judgment lien placed on his Avon property by the plaintiff, violated his right to due process. In his answer to the counterclaim, the plaintiff denied all allegations. The matter proceeded to a trial held on May 3 and June 14 and 15, 2007.

In its July 11, 2007 memorandum of decision, the court, *Hon. Richard M. Rittenband,* judge trial referee, found the defendant to be a credible witness; he found the plaintiff's credibility "lacking . . . ." The court stated that the plaintiff "demonstrated a surprising lack of memory of many of the facts and issues important to this case." The court's analysis centered on the determination made by Judge Dranginis that the plaintiff's legal fees billed to Lynn Chan in the dissolution action were unconscionable and unenforceable.[10] Because that determination never was presented to Judge Beach, the court concluded that the stipulated judgment between the plaintiff and Lynn Chan constituted a fraud on that

[9] On October 27, 2004, Judge Prestley entered an order, stating: "The defendant satisfied the alimony order payable to [Lynn Chan], and it is hereby terminated." On August 24, 2006, Judge Prestley granted the plaintiff's motion to open and to vacate that order, finding that the defendant failed to provide notice to the plaintiff of the defendant's motion concerning the alleged satisfaction of the alimony obligation.

[10] The court appended a copy of Judge Dranginis' May 14, 1999 memorandum of decision, labeled "exhibit A," to its memorandum of decision.

court. The court further found that the present action likewise constituted a fraud on the court in light of the fraudulent nature of the stipulated judgment.

The court also concluded that the doctrines of res judicata and collateral estoppel barred the plaintiff's action. It stated: "This court finds that the issue of the validity of . . . the attorney's fees allegedly due to the plaintiff . . . was fully litigated and decided by Judge Dranginis in the divorce action to be excessive and unenforceable. Her decision involved the same parties, namely, [the defendant], Lynn Chan and [the plaintiff]." The court stated that the September 3, 1997 note executed by Lynn Chan in favor of the plaintiff provided that "[t]his [debt] shall not be collected from the future income" of Lynn Chan and, finding the alimony order to be future income, concluded that the plaintiff "was not entitled to an assignment of the future income, the alimony of $75,000." In addition, the court found that the plaintiff, in preparing the September 3, 1997 note for Lynn Chan, "did not conform to [rule] 1.8 of the . . . Rules of Professional Conduct . . . ." Finally, the court found that the defendant "made payments of alimony totaling $45,000 to Lynn Chan before he received notice . . . of the assignment of his obligation of alimony to [the plaintiff]."

Accordingly, the court rendered judgment in favor of the defendant on the plaintiff's complaint. Because it found that the plaintiff brought that action without probable cause, the court ruled in favor of the defendant on his vexatious litigation counterclaim and awarded him $4410 in damages pursuant to General Statutes § 52-568.[11] Additionally, the court issued an injunction

---

[11] General Statutes § 52-568 provides: "Any person who commences and prosecutes any civil action or complaint against another, in his own name or the name of others, or asserts a defense to any civil action or complaint commenced and prosecuted by another (1) without probable cause, shall pay such other person double damages, or (2) without probable cause, and with a malicious intent unjustly to vex and trouble such other person, shall pay him treble damages."

ordering the plaintiff "to cease and desist from any and all claims against [the defendant]."[12] This appeal followed.

## II

## THE DECISION OF THE TRIAL COURT

Our analysis in the present case begins with the conclusions of the trial court concerning the plaintiff's complaint. In its memorandum of decision, the court (1) concluded that the present action was barred by the doctrines of res judicata and collateral estoppel, (2) found that the plaintiff perpetrated a fraud on the court, (3) concluded that the terms of the note prohibited the assignment of Lynn Chan's award of alimony to the plaintiff, (4) concluded that in preparing the note, the plaintiff violated rule 1.8 of the Rules of Professional Conduct and (5) found that the defendant made $45,000 in alimony payments to Lynn Chan. We briefly address each in turn.

## A

The applicability of the doctrines of res judicata or collateral estoppel presents a question of law, over which our review is plenary. *Testa* v. *Geressy*, 286 Conn. 291, 306, 943 A.2d 1075 (2008). "The doctrine of res judicata holds that an existing final judgment rendered upon the merits without fraud or collusion, by a court of competent jurisdiction, is conclusive of causes of action and of facts or issues thereby litigated as to the parties and their privies in all other actions in the same or any other judicial tribunal of concurrent jurisdiction. . . . If the same cause of action is again sued on, the judgment is a bar with respect to any claims relating to the cause of action which were actually made or which might have been made. . . . Claim preclusion (res judicata) and issue preclusion (collateral estoppel)

---

[12] The plaintiff has not challenged that determination on appeal.

have been described as related ideas on a continuum. . . . More specifically, collateral estoppel, or issue preclusion . . . prohibits the relitigation of an issue when that issue was actually litigated and necessarily determined in a prior action between the same parties or those in privity with them upon a different claim. . . . An issue is actually litigated if it is properly raised in the pleadings or otherwise, submitted for determination, and in fact determined." (Citations omitted; internal quotation marks omitted.) *Powell* v. *Infinity Ins. Co.*, 282 Conn. 594, 600–601, 922 A.2d 1073 (2007).

The court incorrectly determined that the present action was barred by the doctrines of res judicata and collateral estoppel. The issue of Lynn Chan's legal fees was neither fully litigated nor decided by Judge Dranginis in that proceeding. To be sure, the issues of whether the defendant was liable to pay Lynn Chan's legal fees and whether the plaintiff's bill was reasonable were fully litigated. The court was presented with ample evidence concerning those issues, and the plaintiff testified thereon. Judge Dranginis concluded, as to the issue of an award of attorney's fees to be paid to Lynn Chan by the defendant, that the plaintiff's quarter of a million dollar bill was unreasonable, unconscionable and unenforceable. At the same time, the court ordered that Lynn Chan "shall be responsible for her own attorney's fees. She must bear some responsibility for the extent of litigation which spawned this huge bill, and it appears that [the defendant] copied the tactics of her counsel to keep the parties in court." Reading the memorandum of decision as a whole, it is readily apparent that the issue of precisely what constituted a reasonable fee to be paid by Lynn Chan was not fully litigated or decided by Judge Dranginis. As such, the present action is not barred by res judicata or collateral estoppel stemming from that judgment of dissolution.

## B

We address together the court's determinations that the plaintiff committed a fraud on that court in securing the stipulated judgment, that the terms of the note prohibited the assignment of Lynn Chan's award of alimony to the plaintiff and that the plaintiff violated rule 1.8 of the Rules of Professional Conduct in preparing the note. Those issues were not properly before the court in the present action.

As our Supreme Court has explained, "due to the adversarial nature of our judicial system, '[t]he court's function is generally limited to adjudicating the issues *raised by the parties* on the proof they have presented and applying appropriate procedural sanctions on motion of a party.' . . . F. James, G. Hazard & J. Leubsdorf, Civil Procedure (5th Ed. 2001) § 1.2, p. 4." (Emphasis in original.) *Vertex, Inc.* v. *Waterbury*, 278 Conn. 557, 564, 898 A.2d 178 (2006). Connecticut is a fact pleading jurisdiction. See Practice Book § 10-1; *Florian* v. *Lenge*, 91 Conn. App. 268, 274, 880 A.2d 985 (2005). "Pleadings have an essential purpose in the judicial process. . . . The purpose of pleading is to apprise the court and opposing counsel of the issues to be tried . . . ." (Citation omitted; internal quotation marks omitted.) *Thames River Recycling, Inc.* v. *Gallo*, 50 Conn. App. 767, 782–83, 720 A.2d 242 (1998); see also 71 C.J.S. 38, Pleading § 3 (2000) ("purpose of pleadings is to frame, present, define, and narrow the issues, and to form the foundation of, and to limit, the proof to be submitted on the trial"). For that reason, "[i]t is imperative that the court and opposing counsel be able to rely on the statement of issues as set forth in the pleadings. . . . As Justice Cardozo has written: justice, though due to the accused, is due to the accuser also. . . . Fairness is a double-edged sword and both sides

are entitled to its benefits throughout the trial." (Citations omitted; internal quotation marks omitted.) *State* v. *Cooper*, 64 Conn. App. 121, 125, 779 A.2d 789 (2001).

The pleadings contain no allegations that the plaintiff perpetrated a fraud on the court in securing the stipulated judgment, that the terms of the note prohibited the assignment of the award of alimony to the plaintiff or that the plaintiff violated rule 1.8 of the Rules of Professional Conduct in preparing the note. The plaintiff never was apprised that those questions concerning the stipulated judgment were at issue in the present case. Rather, the court during trial made repeated comments to the contrary, opining that "I can't overturn Judge Beach, not at this point," and stating that "the $252,248 is a judgment. Whether it should have been a judgment, I'm not going to get into that. It's not my business." Nevertheless, the court sua sponte raised and decided the aforementioned issues in its memorandum of decision. The court neither acknowledged nor explained its departure from the well established principle that, at trial, the issues are limited to those alleged in the pleadings. As a result, the plaintiff was not afforded "adequate notice of the issues the court intended to address . . . ." *Pritchard* v. *Pritchard*, 103 Conn. App. 276, 288, 928 A.2d 566 (2007); see also *Haynes Construction Co.* v. *Cascella & Son Construction, Inc.*, 36 Conn. App. 29, 36, 647 A.2d 1015 (party has right to fair notice that trial court may render judgment with respect to given issue), cert. denied, 231 Conn. 916, 648 A.2d 152 (1994). In light of the foregoing, we conclude that the court improperly reached those issues.

C

The court also found that the defendant made $45,000 in alimony payments to Lynn Chan "before he received notice . . . of the assignment of his obligation of alimony to [the plaintiff]." That finding is reviewed under

the clearly erroneous standard. "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . Because it is the trial court's function to weigh the evidence . . . we give great deference to its findings." (Internal quotation marks omitted.) *Reiner, Reiner & Bendett, P.C.* v. *Cadle Co.*, 278 Conn. 92, 107, 897 A.2d 58 (2006). As an appellate tribunal, this court "may not retry a case. . . . The factfinding function is vested in the trial court with its unique opportunity to view the evidence . . . including its observations of the demeanor and conduct of the witnesses and parties, which is not fully reflected in the cold, printed record which is available to us. Appellate review of a factual finding, therefore, is limited both as a practical matter and as a matter of the fundamental difference between the role of the trial court and an appellate court." (Internal quotation marks omitted.) *D'Ascanio* v. *D'Ascanio*, 237 Conn. 481, 487, 678 A.2d 469 (1996). Finally, we note that the trier of fact, in this case, the trial court, is the sole arbiter of credibility, and thus is "free to accept or reject, in whole or in part, the testimony offered by either party." (Internal quotation marks omitted.) *DiVito* v. *DiVito*, 77 Conn. App. 124, 138, 822 A.2d 294, cert. denied, 264 Conn. 921, 828 A.2d 617 (2003).

The defendant testified at trial that he made multiple alimony payments in various amounts to Lynn Chan prior to the assignment of his alimony obligation and stated that he "took cash advances against my credit cards." The defendant testified that although he had received receipts documenting those payments, he later "purged the files. . . . Once I had the court order vacating the alimony payments and [indicating] full satisfaction of alimony payments, I didn't feel a need . . . to

keep any records."[13] The court credited that testimony in its memorandum of decision.

Apparently conceding that there exists evidence in the record to support the court's finding, the plaintiff maintains that this court "should reach the 'definite and firm conviction that a mistake has been committed' . . . ." The plaintiff focuses primarily on the defendant's failure to produce documentation in support of his testimony regarding the alimony payments. The court, however, expressly acknowledged the defendant's "failure to produce evidence of payment" but nevertheless stated that "on the whole, [it] still finds [the defendant's] testimony as to alimony payments credible." As the trier of fact, the court was free to credit the defendant's explanation for the purging of his records. It is not for this court, on appeal, to revisit that credibility determination.

The plaintiff also alleges that the court improperly intervened on the defendant's behalf by "reading into the record testimony from an earlier hearing that was more favorable to the defendant than his testimony at trial and disregarding the hearsay rule." The plaintiff voiced no objection on this point at trial, nor did he otherwise preserve the issue for appeal.[14] "We have repeatedly held that this court will not consider claimed errors on the part of the trial court unless it appears on the record that the question was distinctly raised at trial and was ruled upon and decided by the court adversely to the appellant's claim." (Internal quotation marks omitted.) *McGuire* v. *McGuire*, 102 Conn. App.

---

[13] See footnote 9.

[14] The plaintiff submitted a posttrial brief dated June 28, 2007. Despite the fact that the sole issue presented in that brief was "[w]hat alimony payments, if any, did the defendant prove he paid to Lynn Chan before notice to him of her assignment of alimony to the plaintiff," the plaintiff did not raise any of the arguments he now advances on appeal.

79, 87, 924 A.2d 886 (2007); see also Practice Book § 60-5 (court not bound to consider claim "unless it was distinctly raised at the trial"). Furthermore, a review of the transcript indicates that counsel for the plaintiff, and not the trial court, raised the issue of the defendant's testimony before Judge Keller at trial. At one point, the court specifically inquired whether counsel had "any objection to my looking at [the transcript of the proceeding before Judge Keller]," to which counsel for the plaintiff replied, "none whatsoever, Your Honor." The court subsequently questioned the defendant as to that testimony without objection by the plaintiff.

We conclude that there was evidence in the record to support the court's finding that the plaintiff made $45,000 in alimony payments. As such, that finding is not clearly erroneous.

### III

### SUPERVISORY POWERS

The trial court appropriately began its memorandum of decision with the understatement that "[t]his is an unusual case . . . ." It is an important one as well. For the reasons that follow, we invoke our supervisory power over the administration of justice in resolving the present appeal.

"Appellate courts possess an inherent supervisory authority over the administration of justice. . . . The standards that [are] set under this supervisory authority are not satisfied by observance of those minimal historic safeguards for securing trial by reason which are summarized as due process of law . . . . Rather, the standards are flexible and are to be determined in the interests of justice. . . . [O]ur supervisory authority [however] is not a form of free-floating justice, untethered to legal principle. . . . [T]he integrity of the judicial system serves as a unifying principle behind the

seemingly disparate use of our supervisory powers. . . . [O]ur supervisory powers are invoked only in the rare circumstance where [the] traditional protections are inadequate to ensure the fair and just administration of the courts . . . ." (Internal quotation marks omitted.) *State* v. *Mukhtaar*, 253 Conn. 280, 290 n.11, 750 A.2d 1059 (2000); see also Practice Book §§ 60-1 and 60-2.

Ordinarily, our supervisory powers are invoked "to enunciate a rule that is not constitutionally required but that we think is preferable as a matter of policy." *State* v. *Ledbetter*, 275 Conn. 534, 578, 881 A.2d 290 (2005), cert. denied, 547 U.S. 1082, 126 S. Ct. 1798, 164 L. Ed. 2d 537 (2006). As our Supreme Court explained, "[s]upervisory powers are exercised to direct trial courts to adopt judicial procedures that will address matters that are of utmost seriousness, not only for the integrity of a particular trial but also for the perceived fairness of the judicial system as a whole." (Internal quotation marks omitted.) *State* v. *Valedon*, 261 Conn. 381, 386, 802 A.2d 836 (2002). At the same time, "[a]lthough [w]e previously have exercised our supervisory powers to direct trial courts to adopt judicial procedures . . . we also have exercised our authority to address the result in individual cases . . . because [certain] conduct, although not rising to the level of constitutional magnitude, is unduly offensive to the maintenance of a sound judicial process." (Citation omitted; internal quotation marks omitted.) *State* v. *Anderson*, 255 Conn. 425, 439, 773 A.2d 287 (2001). We conclude that the present case warrants the exercise of those powers.

The pleadings and the record in this case indicate that the present appeal is rooted in multiple related proceedings arising from a common nucleus of facts,

which we previously detailed. The trial court took judicial notice of those proceedings. In unraveling this tangled web, we begin with the decision of the trial court in dissolving the marriage of the defendant and Lynn Chan.

In the dissolution action, Lynn Chan sought an award of attorney's fees from the defendant, which the defendant challenged at trial. The court was presented with ample evidence on that issue, and the plaintiff and attorney Jack Miller testified thereon. The court found that the plaintiff charged Lynn Chan roughly one quarter of a million dollars for his representation. In her memorandum of decision, Judge Dranginis concluded that the plaintiff's legal bill was unreasonable, unconscionable and unenforceable.[15] Accordingly, she declined to order

---

[15] The salient portion of Judge Dranginis' memorandum of decision states: "The current bill is approximately . . . $245,000. The court allowed the defendant to inquire of [the plaintiff] under oath, who was asked why the bill was so high. [The plaintiff] responded that was occasioned by the defendant's misconduct. The fee agreement [the plaintiff] had with [Lynn Chan] was for attorney's fees of . . . $195 per hour and . . . $30 per hour for clerical help. The attorney-client relationship has spanned over five . . . years, or approximately . . . $49,000 . . . per year, including costs. The defendant went through a number of dates on the bill, including the times of two hours, one hour and the like for the preparation of repetitive subpoenas to the defendant. In response, [the plaintiff] indicated that there was a need for repetitive subpoenas in that the defendant would only partially comply with the subpoenas, and [there was] the need to review and revamp those subpoenas.

"The court allowed the defendant to subpoena attorney Jack Miller, with whom [the plaintiff] claimed he had had two hours of consultations on September 20, 1994. Miller testified that he had only a vague recollection of any conversation with the defendant and that he had never opened a file or received any funds from him. If he had had documents, they had been destroyed. While there may have been a contact, there was no actual representation. The defendant claimed that he had never met attorney Miller and that [the plaintiff] was lying. The bill for those services does not appear to be proved.

"There were instances where the claim for fees was not sustained, and the court is of the opinion that the fees far exceeded what was the reasonable value of the case, in light of the circumstances of the assets of the marriage. As a concern, the court notes that counsel continued to engage in proceedings with the defendant, which had little if any practical or legal value for the ultimate issues which are at the core of this litigation. Moreover, [Lynn

the defendant to pay any attorney's fees. Although Judge Dranginis did not determine what constituted a reasonable fee, she ordered that Lynn Chan "shall be responsible for her own attorney's fees."

The next significant development came when the plaintiff sued Lynn Chan to recover those fees. The plaintiff filed his complaint in the Superior Court for the judicial district of Hartford on July 12, 2002. In that complaint, he averred that Lynn Chan owed him more than $250,000 in legal fees stemming from the dissolution action.[16]

Our rules of practice require all allegations of a complaint to be founded on a reasonable basis. See Practice

Chan] has a variety of health concerns which militate against protracted litigation. If the legal fees claimed are paid, there will be no marital assets for the parties. [Lynn Chan] has been absent for the bulk of this litigation, and it appears that [the plaintiff] and the defendant developed a contested relationship of their own.

"The defendant examined [the plaintiff] on the validity of his bill at length. It was clear from the testimony that [the plaintiff] billed each and every interaction with [Lynn Chan] and the defendant, and it was also clear that the level of conflict in this action was high. What is incumbently [sic] clear, however, is that the matter was overly litigated, to the extent that the claim for attorney's fees, if paid, would diminish the value of the marital estate by more than one half. The decision to carry on was blamed on the defendant by the plaintiff and on [the plaintiff] by the defendant. The reasonableness of the bill to [Lynn Chan], for which [she] seeks reimbursement from the defendant as part of the distribution of marital assets, must be assessed with respect to the attorney-client relationship between [Lynn Chan] and [the plaintiff]. For counsel to continue to engage the defendant, who was not willing to agree to very much in the matter, worked to the detriment of his client. This court cannot countenance or approve of a bill for services rendered in a case which asks for compensation which equals more than one half of the entire marital estate. The findings of the court on the issue of fault also belie the activity on this file."

[16] The complaint sought to collect the balance, interest and late fees due under the terms of the note, which expressly provided that such moneys were for legal fees resulting from the plaintiff's representation of Lynn Chan in the dissolution proceeding. We repeat that prior to instituting the civil action against his former client, the plaintiff sent Lynn Chan a statement of "payments received and outstanding balance," which indicated that the outstanding balance as of May, 2000, was more than $330,000.

Book § 10-5; see also rule 3.3 (a) (1) of the Rules of Professional Conduct (prohibiting lawyer from knowingly making "a false statement of fact or law to a tribunal"). Although she did not articulate precisely what constituted a reasonable fee for the plaintiff's legal services in the dissolution action, Judge Dranginis did conclude that $245,000 was unreasonable. The plaintiff nevertheless alleged in his subsequent complaint that Lynn Chan owed him more than one quarter of a million dollars in legal fees and interest.

Moreover, he repeated that allegation in the stipulation for judgment that he submitted to the court on December 26, 2002. There is no indication in the record that the plaintiff or his counsel at any time discussed with Lynn Chan, who was not represented by counsel, the fact that Judge Dranginis had concluded that his quarter of a million dollar legal fee was unreasonable, unconscionable and unenforceable or advised her to consider the assistance of an attorney. In addition, the trial court found that, in considering the plaintiff's motion for judgment in accordance with the stipulation, "[t]here is no evidence that Judge Beach was advised of Judge Dranginis' decision that the legal fees were unenforceable. There is nothing in the file indicating that [the plaintiff] or his attorney . . . advised Judge Beach of Judge Dranginis' decision."[17]

As our Supreme Court has cautioned, "[w]e do not take lightly, nor can we, any misrepresentation or concealment of essential information upon which the trial court must rely in fashioning a decree . . . ." (Citations omitted.) *Masters* v. *Masters*, 201 Conn. 50, 56, 513 A.2d 104 (1986). The stipulation prepared by counsel for the plaintiff and signed by the plaintiff and Lynn Chan provided in relevant part that "[t]he parties in the above matter hereby stipulate that judgment shall enter in

---

[17] The plaintiff does not contest that finding on appeal.

favor of the plaintiff . . . in the principal amount of $156,872.00, plus interest from September 3, 1997 through September 3, 2002, in the amount of $94,115.25, plus attorney's fees in the amount of $1,000 plus costs in the amount of $261.45 for a total due and owing of $252,248.70." That stipulation directly contravenes Judge Dranginis' determination that the quarter of a million dollar legal fee was unreasonable, unconscionable and unenforceable. Because the issue of the reasonableness of the plaintiff's legal fee in the dissolution action already had been litigated and decided by the court, as well as the defendant's liability therefor, it was incumbent on the plaintiff to apprise the court of that decision when submitting to the court his motion for judgment in accordance with the stipulation.[18] In subsequently bringing suit against Lynn Chan to collect the very legal fees that Judge Dranginis had found to be unreasonable, unconscionable and unenforceable and submitting to the court a stipulation that stated a "total due and owing of $252,248.70," the plaintiff subverted Judge Dranginis' decision. That conduct is offensive to the maintenance of a sound judicial process. See *State* v. *Anderson*, supra, 255 Conn. 439.

Furthermore, § 39 of 1 Restatement (Second), Judgments (1982), precluded the plaintiff from proceeding against Lynn Chan to recover the more than $250,000 in legal fees stemming from the dissolution action, as

---

[18] Because neither party raised the issue at trial or on appeal, we do not consider the question of whether the assignment of alimony to an attorney as compensation for legal services violates public policy. We do note the following observation: "[A]n assignment of lump sum alimony is particularly inappropriate where it runs to an attorney for the payment of legal fees incurred in a domestic case. . . . In the instant case, the effect of the assignment is to render the attorney the real party in interest in the post-judgment contempt proceedings; the enforcement of the alimony order through the court's contempt powers [here] is not for the maintenance and support of the plaintiff but the collection of attorneys fees." *Emerick* v. *Emerick*, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. FA-280232 (November 17, 1986).

pleaded in his complaint. The issue of whether the plaintiff's quarter of a million dollar legal fee was reasonable was fully and fairly litigated in the prior dissolution proceeding. Section 39 provides: "A person who is not a party to an action but who controls or substantially participates in the control of the presentation on behalf of a party is bound by the determination of issues decided as though he were a party." 1 Restatement (Second), Judgments § 39 (1982). The commentary to that section explains the rationale underlying that rule: "A person who assumes control of litigation on behalf of another has the opportunity to present proofs and argument on the issues litigated. Given this opportunity, he has had his day in court and should be concluded by the result."[19] Id., comment (a). We agree with that proposition.

---

[19] The United States Supreme Court has stated that preclusion of nonparties who control litigation "falls under the rubric of collateral estoppel rather than res judicata because the latter doctrine presupposes identity between causes of action. And the cause of action which a nonparty has vicariously asserted differs by definition from that which he subsequently seeks to litigate in his own right." *Montana* v. *United States*, 440 U.S. 147, 154, 99 S. Ct. 970, 59 L. Ed. 2d 210 (1979). Nevertheless, as the United States Court of Appeals for the First Circuit has noted, "[n]otwithstanding the *Montana* dictum, several courts, including this court, continue to apply res judicata to nonparties when the circumstances warrant. . . . [C]ourts continue routinely to formulate res judicata as a doctrine that bars parties 'or their privies' from relitigating claims. . . . The doctrine of res judicata serves many desirable ends, among them finality and efficiency. . . . Logic suggests that the doctrine can achieve its goals only if its preclusive effects occasionally can reach persons who, technically, were not parties to the original action. The pitfalls of a more mechanical rule are obvious; making party status a sine qua non for the operation of res judicata opens the door to countless varieties of manipulation, including claim-splitting, suits by proxy, and forum-shopping. . . . [R]eading *Montana*'s dictum as categorically eliminating res judicata whenever there are technically distinct parties is at loggerheads with the hoary concept of privity—a concept long since integrated into the legal lexicon and routinely applied in analogous situations." (Citations omitted.) *Gonzalez* v. *Banco Central Corp.*, 27 F.3d 751, 757 (1st Cir. 1994). As a result, the First Circuit held that "res judicata can sometimes operate to bar the maintenance of an action by persons who, technically, were not parties to the initial action (to which preclusive effect is attributed)." Id.

The commentary further explains that "control," as that term is used in § 39, refers to the ability to exercise "effective choice as to the legal theories and proofs to be advanced," as well as "control over the opportunity to obtain review." Id., comment (c). In *Phelps* v. *Hamilton*, 122 F.3d 1309 (10th Cir. 1997), the United States Court of Appeals for the Tenth Circuit addressed the question of whether an attorney who represented certain plaintiffs in a prior state court proceeding was in privity with them for purposes of collateral estoppel. Applying § 39 of the Restatement (Second) of Judgments, the court answered affirmatively: "[I]n applying the definition of 'control' for purposes of finding privity, it is clear that Margie Phelps, as listed attorney for each of the plaintiffs, not only had input into the legal theories and arguments advanced, but could be said to be directly responsible, along with co-counsel, for 'controlling' the entire course of the state court proceedings. On this basis, we hold that privity exists between the parties in this action such that Margie Phelps may be bound by the state court determinations . . . ." Id., 1319. Similarly, the Supreme Court of New Hampshire has recognized that when a party demonstrates that an attorney in a prior proceeding "exerted such control over the underlying litigation that he should be bound by a determination [in that proceeding] as though he himself were a party," that attorney is collaterally estopped from contesting that determination. *Aranson* v. *Schroeder*, 140 N.H. 359, 369, 671 A.2d 1023 (1995); see also *United States* v. *Davis*, 906 F.2d 829, 833 (2d Cir. 1990) (nonparty to action can be bound by determination of issues decided in that action if it "controls or substantially participates in the control of the presentation on behalf of a party" [internal quotation marks omitted]).

Application of § 39 of the Restatement (Second) of Judgments seems particularly appropriate in the present case. Despite the fact that the dissolution action

lasted six years, Lynn Chan did not once appear in court. Her testimony at trial was via deposition in Arizona with local counsel; the plaintiff never met Lynn Chan in person. See footnote 2. Judge Dranginis' findings further make clear that the plaintiff exercised substantial control in the underlying litigation. As she found in her memorandum of decision: "[The plaintiff] continued to engage in proceedings with the defendant, which had little if any practical or legal value for the ultimate issues which are at the core of this litigation. Moreover, [Lynn Chan] has a variety of health concerns which militate against protracted litigation. . . . [Lynn Chan] has been absent for the bulk of this litigation, and it appears that [the plaintiff] and the defendant developed a contested relationship of their own." In such circumstances, like the attorneys in *Phelps* v. *Hamilton*, supra, 122 F.3d 1319, and *Aranson* v. *Schroeder*, supra, 140 N.H. 369, the plaintiff would be bound by Judge Dranginis' determination in the prior proceeding as to the reasonableness, enforceability and conscionability of his charged legal fee. Had the plaintiff apprised Judge Beach of Judge Dranginis' prior decision on the issue of his legal fees billed to Lynn Chan in the dissolution proceeding when he filed his "motion for judgment in accordance with stipulation," the court well may have denied the motion on the grounds of res judicata or collateral estoppel.[20] His failure to do so undermined the ability of the trial court to consider and decide the motion before it properly and, by extension, the integrity of the judicial system.

Our supervisory powers "are an extraordinary remedy to be invoked only when circumstances are such that the issue at hand, while not rising to the level of a constitutional violation, is nonetheless of utmost seriousness, not only for the integrity of a particular

---

[20] Res judicata may be raised by the court sua sponte. *Legassey* v. *Shulansky*, 28 Conn. App. 653, 654, 611 A.2d 930 (1992).

trial but also for the perceived fairness of the judicial system as a whole." (Internal quotation marks omitted.) *State* v. *Hines*, 243 Conn. 796, 815, 709 A.2d 522 (1998). Exercising those powers to ensure the fair and just administration of the courts, we vacate the judgment of January 13, 2003, granting the plaintiff's motion for judgment in accordance with the parties' stipulation.

"[An appellate court] can sustain a right decision although it may have been placed on a wrong ground." (Internal quotation marks omitted.) *LaBow* v. *LaBow*, 69 Conn. App. 760, 761 n.2, 796 A.2d 592, cert. denied, 261 Conn. 903, 802 A.2d 853 (2002); see also *Flagg Energy Development Corp.* v. *General Motors Corp.*, 244 Conn. 126, 151, 709 A.2d 1075 (1998). Because the present action was predicated entirely on the stipulated judgment, we conclude that the court properly rendered judgment in favor of the defendant on the plaintiff's complaint.

## IV

## VEXATIOUS LITIGATION

A final question remains. After ruling in favor of the defendant on the plaintiff's complaint, the court ruled in favor of the defendant on his vexatious litigation counterclaim and awarded him $4410 in damages pursuant to § 52-568. We agree with the plaintiff that this determination was improper.

Section 52-568 provides: "Any person who commences and prosecutes any civil action or complaint against another, in his own name or the name of others, or asserts a defense to any civil action or complaint commenced and prosecuted by another (1) without probable cause, shall pay such other person double damages, or (2) without probable cause, and with a malicious intent unjustly to vex and trouble such other

person, shall pay him treble damages." To establish a statutory claim thereunder, it is necessary to prove, at a minimum, "want of probable cause . . . and a termination of suit in the plaintiff's favor." (Internal quotation marks omitted.) *Falls Church Group, Ltd.* v. *Tyler, Cooper & Alcorn, LLP*, 281 Conn. 84, 94, 912 A.2d 1019 (2007).

The counterclaim alleged, and the court found, that the plaintiff "brought the instant suit without probable cause." At the time of that pleading, an essential element was lacking, as the plaintiff's action had not been terminated in the defendant's favor. A condition precedent to the institution of an action for vexatious litigation is that the original action has terminated unsuccessfully. As our Supreme Court explained, "[w]e have held that a claim for vexatious litigation requires a plaintiff to allege that the *previous lawsuit* was initiated maliciously, without probable cause, and terminated in the plaintiff's favor. . . . In suits for vexatious litigation, it is recognized to be sound policy to require the plaintiff to allege that *prior litigation* terminated in his favor." (Citations omitted; emphasis added.) *Blake* v. *Levy*, 191 Conn. 257, 263, 464 A.2d 52 (1983). Furthermore, in *Equality, Inc.* v. *I-Link Communications, Inc.*, 76 F. Sup. 2d 227, 229 (D. Conn. 1999), the United States District Court for the District of Connecticut held that under Connecticut law, a counterclaim alleging vexatious litigation may not be brought in the same action as that which the defendant claims is vexatious. We agree. Accordingly, the defendant in the present case could not prevail under § 52-568, as his action was premature. We conclude that the court improperly rendered judgment in favor of the defendant on his counterclaim.

The judgment for the defendant on the counterclaim is reversed and the case is remanded with direction to render judgment for the plaintiff on the counterclaim.

The judgment for the defendant on the complaint is affirmed. The January 13, 2003 judgment (CV-02-0818041-S) granting the plaintiff's motion for judgment in accordance with the stipulation is vacated.

In this opinion the other judges concurred.