MJM LANDSCAPING, INC. *v.* PAUL R. LORANT ET AL.
(SC 17023)

Katz, Palmer, Vertefeuille, Zarella and Murray, Js.

Argued December 8, 2003—officially released April 13, 2004

*Mark S. Gregory,* for the appellant (named defendant).

*Roger J. Pearson,* for the appellee (plaintiff).

*Opinion*

PALMER, J. The dispositive issue raised by this appeal is whether a written agreement (agreement) entered into by the plaintiff, MJM Landscaping, Inc., and the named defendant, Paul R. Lorant,[1] is subject to the requirements of the Home Improvement Act (act), General Statutes § 20-418 et seq. The plaintiff initiated this action seeking strict foreclosure of a mechanic's lien that was filed in connection with the defendant's failure to pay in full for a septic system that the plaintiff

---

[1] Greenwich Design and Build, LLC, which claimed an interest in the named defendant's real property by virtue of a previously filed mechanic's lien, also was named as a defendant. Greenwich Design and Build, LLC, did not participate in this appeal, however. All references throughout this opinion to the defendant include the named defendant only.

had constructed and installed on the defendant's property. The defendant acknowledged that he had failed to pay the plaintiff in accordance with the agreement, but claimed, by way of special defense, that the agreement is unenforceable because it does not comply with the act, in particular, General Statutes § 20-429 (a).[2] The defendant also filed a counterclaim alleging, inter alia, that the plaintiff's failure to comply with the act constituted a violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq.[3] The case was tried to the court, which concluded that the agreement is not a home improvement contract within the meaning of the act and, therefore, not governed by the act because the plaintiff was acting as a subcontractor rather than a home improvement contractor when it constructed and installed the septic system. In accordance with this conclusion, the court rendered judgment for the plaintiff both on its complaint and on the defendant's counterclaim.[4] On

---

[2] General Statutes § 20-429 (a) provides in relevant part: "No home improvement contract shall be valid or enforceable against an owner unless it: (1) Is in writing, (2) is signed by the owner and the contractor, (3) contains the entire agreement between the owner and the contractor, (4) contains the date of the transaction, (5) contains the name and address of the contractor, (6) contains a notice of the owner's cancellation rights in accordance with the provisions of chapter 740, (7) contains a starting date and completion date, and (8) is entered into by a registered salesman or registered contractor. . . ."

[3] The defendant's counterclaim also contained a count alleging negligent workmanship. The defendant withdrew that portion of his counterclaim, however, prior to trial.

[4] In its memorandum of decision, the trial court indicated that the defendant had withdrawn his counterclaim in court at the conclusion of the trial. In fact, the defendant withdrew the count of his counterclaim alleging negligent workmanship; see footnote 3 of this opinion; but not the count of the counterclaim alleging a violation of CUTPA. Inasmuch as the defendant's CUTPA claim depended entirely upon the viability of his claim under the act, however, the trial court's determination that the agreement is not subject to the act necessarily was fatal to the defendant's CUTPA claim. For purposes of this appeal, we treat the judgment of the trial court rendered in favor of the plaintiff as pertaining both to the plaintiff's complaint and to the defendant's counterclaim.

appeal,[5] the defendant challenges the conclusion of the trial court that the agreement falls outside the purview of the act. We reject the defendant's claim and, consequently, affirm the judgment of the trial court.[6]

The evidence adduced at trial revealed the following relevant facts. In 1992, the defendant, a resident of Japan, purchased residential property located at 43 West Brother Drive in Greenwich for investment purposes. In 1998, a departing tenant informed the defendant that there was a problem with the property's septic system. Upon the recommendation of a real estate broker with whom the defendant previously had done business, the defendant retained an engineer to design a new septic system.

The defendant subsequently hired Greenwich Design and Build, LLC[7] (Greenwich Design) to supervise the construction of the new septic system. To ensure that there was no misunderstanding as to what he expected of Greenwich Design, the defendant prepared and transmitted to Greenwich Design a document entitled "Engineering Consultant: Request For Cost Estimate." That document states that the defendant was retaining Greenwich Design in connection with the "[c]onstruction and installation of a new septic system for the property," and lists Greenwich Design's job specifica-

[5] The defendant appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[6] On appeal, the plaintiff also claims, as an alternate ground for affirmance, that the defendant is barred from asserting a defense predicated on noncompliance with the act because the evidence adduced at trial established, as a matter of law, that the defendant repudiated the agreement in bad faith. See, e.g., *Rizzo Pool Co.* v. *Del Grosso*, 232 Conn. 666, 680 n.22, 657 A.2d 1087 (1995) ("[a] homeowner cannot in bad faith invoke the contractor's . . . violation [of the act] as a basis for his own repudiation of the contract"). Like the trial court, we do not reach this claim because the act does not apply under the circumstances of this case.

[7] See footnote 1 of this opinion.

tions as: (1) "[s]election of one septic system construction and installation company . . . based on review of alternate cost estimate submissions from respective companies"; (2) "[o]n-going direction and monitoring of actual construction work to insure that the optimum quality new septic system is installed at the property"; and (3) "[o]n-going reporting of the work progress as appropriate . . . ." Thereafter, the defendant urged Greenwich Design to proceed as quickly as possible, describing the nature of the project as "urgent." Nevertheless, the defendant and Greenwich Design never executed a written contract.

Greenwich Design solicited bids from a number of companies for the construction and installation of the septic system. As part of this process, Adam Ross of Greenwich Design, and Rene Bastias, a site engineer and principal of the plaintiff, met at the property to review the design plan for the septic system. The plaintiff subsequently prepared a handwritten proposal for Greenwich Design providing for the construction and installation of the septic system at a price of $58,000. Ross asked Bastias to forward a typed version of the proposal to the defendant in Japan so that the defendant could review and execute it, and Bastias did so.[8] This proposal contained a list of services that the plaintiff had agreed to provide, a list of exclusions and a price of $58,000. The proposal did not contain a notice of cancellation provision and did not specify either a starting date or a completion date for the project.[9] The defendant executed the proposal and sent $29,000 to the plaintiff via wire transfer. This executed proposal is the agreement that the plaintiff seeks to enforce and that the defendant claims is in violation of the act.

[8] According to Bastias, the proposal submitted to Greenwich Design and later sent by facsimile to the defendant was identical in format to proposals normally submitted by the plaintiff to general contractors.

[9] Bastias testified that the plaintiff orally had informed the defendant of his right of cancellation.

Shortly thereafter, the plaintiff obtained a construction permit from the town of Greenwich and, on August 25, 1998, began work on the project. The defendant repeatedly underscored his desire to have the project completed as expeditiously as possible. Greenwich Design supervised the plaintiff's work throughout the duration of the project, and a representative of Greenwich Design was present at the project site every day. Nevertheless, the defendant communicated directly with the plaintiff when he had questions or concerns regarding the project. At the same time that the plaintiff was constructing and installing the septic system, other tradesmen, including electricians, plumbers and carpenters, also were performing work inside the residence. Greenwich Design supervised that work as well.

Upon completion of the project,[10] Greenwich Design instructed the plaintiff to send a final bill directly to the defendant, and the plaintiff did so. In response, the defendant sent a facsimile to Greenwich Design and the plaintiff requesting certain information, including a use permit from the town of Greenwich, and "one comprehensive invoice" for services rendered by Greenwich Design and the plaintiff. In that facsimile, however, the defendant expressly acknowledged that he had paid only one half of the agreed upon price for the septic system. The facsimile further advised Greenwich Design and the plaintiff to "rest assured that [they would] receive [their] respective due payments."

The defendant failed, however, to remit any additional payments to the plaintiff.[11] As a result, the plaintiff filed a mechanic's lien on the defendant's property and subsequently commenced this action for strict foreclosure of the lien. The defendant raised a special defense

[10] The plaintiff completed the installation of the septic system on or about September 30, 1998.

[11] There is no indication in the record as to whether the plaintiff made any additional payments to Greenwich Design.

alleging that the agreement constituted a home improvement contract subject to the requirements of the act and that, consequently, the agreement was unenforceable because it did not specify a starting date or a completion date, and did not contain a notice of cancellation provision, all of which are required under § 20-429 (a). In addition, the defendant filed a counterclaim alleging, inter alia, that the plaintiff's violation of the act constituted a violation of CUTPA. The trial court rejected the defendant's special defense and counterclaim, concluding that the agreement is not governed by the act because the plaintiff was acting as a subcontractor rather than a home improvement contractor when it constructed and installed the septic system. In accordance with this conclusion, the trial court rendered judgment for the plaintiff on its complaint and on the defendant's counterclaim. This appeal followed.

"The [act] is a remedial statute that was enacted for the purpose of providing the public with a form of consumer protection against unscrupulous home improvement contractors. . . . The aim of the statute is to promote understanding on the part of consumers with respect to the terms of home improvement contracts and their right to cancel such contracts so as to allow them to make informed decisions when purchasing home improvement services." (Citation omitted.) *Wright Bros. Builders, Inc.* v. *Dowling*, 247 Conn. 218, 231, 720 A.2d 235 (1998). To promote this purpose, the act provides that no home improvement contract shall be valid or enforceable against a homeowner unless the contract contains, among other things, a starting date, a completion date and a notice of the homeowner's cancellation rights. General Statutes § 20-429 (a) (6) and (7).

There is no dispute that, in the present case, the agreement between the plaintiff and the defendant fails to meet those requirements. Thus, if the agreement is

governed by the act, the defendant has a valid defense to the plaintiff's enforcement of the agreement and a viable counterclaim against the plaintiff under CUTPA. E.g., *Woronecki* v. *Trappe*, 228 Conn. 574, 579, 637 A.2d 783 (1994) (failure to comply with act is per se violation of CUTPA). In *Meadows* v. *Higgins*, 249 Conn. 155, 166, 733 A.2d 172 (1999), however, this court held, as a matter of law, that subcontractors are not subject to the requirements of the act. The defendant does not ask us to revisit our holding in *Meadows*. He claims, rather, that the trial court improperly determined that the agreement is not governed by the act because, contrary to the finding of the trial court, the plaintiff's role in the construction and installation of the septic system was that of a general contractor rather than a subcontractor. We disagree.

Before addressing the merits of the defendant's claim, we first must determine the applicable standard of review. The defendant asserts that the determination of whether a home improvement service provider is acting as a contractor or a subcontractor involves a question of law subject to de novo appellate review. The defendant's claim is foreclosed by our determination in *Meadows* that that question is one of fact. See id., 168, 171–72. The defendant has proffered no persuasive reason, and we know of none, why we should reconsider that determination. Thus, our review of the trial court's determination of that issue is limited by the deference we afford factual findings. "A finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record." (Internal quotation marks omitted.) *State* v. *Nosik*, 245 Conn. 196, 205, 715 A.2d 673, cert. denied, 525 U.S. 1020, 119 S. Ct. 547, 142 L. Ed. 2d 455 (1998). "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire

evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Lipshie* v. *George M. Taylor & Son, Inc.*, 265 Conn. 173, 182, 828 A.2d 110 (2003). "In applying the clearly erroneous standard to the findings of a trial court, we keep constantly in mind that our function is not to decide factual issues de novo. Our authority, when reviewing the findings of a judge, is circumscribed by the deference we must give to decisions of the trier of fact, who is usually in a superior position to appraise and weigh the evidence. . . . The question for this court . . . is not whether it would have made the findings the trial court did, but whether in view of the evidence and pleadings in the whole record it is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *State* v. *Nosik*, supra, 205.

Applying this highly deferential standard of review, we conclude that the trial court's finding that the plaintiff acted as a subcontractor of Greenwich Design in constructing and installing the septic system was not clearly erroneous. The record discloses that, as the trial court found, the defendant retained Greenwich Design to find a contractor to build and to install a septic system on the defendant's property and to oversee that project. Greenwich Design thereupon solicited bids from a number of contractors, including the plaintiff. The plaintiff responded to the solicitation by submitting a proposal to Greenwich Design. Greenwich Design then met with one of the plaintiff's representatives at the property and thereafter selected the plaintiff to construct and to install the septic system. At the direction of Greenwich Design, the plaintiff transmitted its proposal to the defendant, who agreed to it. In accordance with the defendant's wishes, the plaintiff started the project promptly and completed it expeditiously. At all times, however, Greenwich Design remained responsi-

ble for project oversight and supervision. Moreover, the facts adduced at trial revealed that Greenwich Design also was supervising other work being performed on the property, namely, plumbing, electrical and carpentry work inside the residence. Under these circumstances, we cannot conclude that the trial court was clearly erroneous in finding that the plaintiff was a subcontractor of Greenwich Design. See *Meadows* v. *Higgins*, supra, 249 Conn. 169–72 (conclusion that home improvement services provider was subcontractor supported by evidence that third party fulfilled essential duties of general contractor); see also *Clifford F. MacEvoy Co.* v. *United States ex rel. Calvin Tompkins Co.*, 322 U.S. 102, 109, 64 S. Ct. 890, 88 L. Ed. 2d 1163 (1944) (as established by usage in building trades, "subcontractor" refers to one who takes from general contractor portion of original contract).

The defendant contends that the trial court's finding that the plaintiff was acting as a subcontractor was clearly erroneous because the defendant did not have a written agreement with Greenwich Design but did have one with the plaintiff, and because the plaintiff engaged in certain conduct in filing the mechanic's lien that would suggest that it considered itself to be a general contractor. We are not persuaded.

With respect to the defendant's first contention, the fact that the defendant never entered into a formal written agreement with Greenwich Design does not alter the fundamental nature of the relationship between them. The evidence indicated that the defendant hired Greenwich Design to complete the tasks normally assumed by a general contractor, thereby providing the trial court with an adequate foundation on which to base its finding that Greenwich Design, and not the plaintiff, had assumed the role of general contractor. Furthermore, although it undoubtedly is more often the case that a party hired to perform subcontracting work

will enter into a written agreement with the general contractor rather than with the homeowner, the existence of an alternative arrangement itself does not compel the conclusion that that party is the general contractor. Thus, the absence of a written agreement between Greenwich Design and the defendant, and the existence of such an agreement between the plaintiff and the defendant, were but two facts among many for the trial court to consider in determining the plaintiff's status vis-á-vis Greenwich Design and the defendant.

In support of his claim that certain circumstances associated with the plaintiff's filing of the mechanic's lien reflected the plaintiff's own belief that it was acting as a general contractor, the defendant notes that the plaintiff filed the mechanic's lien without providing written notice of its intent to do so either to the defendant or to Greenwich Design. General Statutes § 49-35 (a)[12] provides that no person other than the general contractor or a subcontractor whose contract with the general contractor is in writing and has been assented to by the property owner is entitled to claim a mechanic's lien without first giving written notice of the intent

---

[12] General Statutes § 49-35 (a) provides in relevant part: "No person other than the original contractor for the construction, raising, removal or repairing of the building, or the development of any lot, or the site development or subdivision of any plot of land or a subcontractor whose contract with the original contractor is in writing and has been assented to in writing by the other party to the original contract, is entitled to claim any such mechanic's lien, unless, after commencing, and not later than ninety days after ceasing, to furnish materials or render services for such construction, raising, removal or repairing, such person gives written notice to the owner of the building, lot or plot of land and to the original contractor that he or she has furnished or commenced to furnish materials, or rendered or commenced to render services, and intends to claim a lien therefor on the building, lot or plot of land . . . ."

Although § 49-35 (a) was subject to technical amendments in 2000; Public Acts 2000, No. 00-99, § 100; 2001; Public Acts 2001, No. 01-195, § 46; and 2003; Public Acts 2003, No. 03-224, § 7; those amendments have no bearing on the merits of this appeal. For ease of reference, we refer to the current revision of § 49-35 (a).

to file such a lien to the property owner and the general contractor. The defendant asserts that, in light of § 49-35 (a), the plaintiff must have considered itself to be a general contractor rather than a subcontractor because it filed the mechanic's lien without first providing notice to the defendant notwithstanding that the plaintiff had no written agreement with Greenwich Design.[13] We agree that the trial court was entitled to consider the plaintiff's failure to provide the defendant with notice of its intent to file a mechanic's lien insofar as the absence of such notice is probative of the plaintiff's understanding of its relationship to Greenwich Design and to the defendant. That evidence, however, is not necessarily any more probative of the nature of the plaintiff's relationship to Greenwich Design and to the defendant than other circumstantial evidence bearing on that relationship.

In sum, we conclude that there was sufficient evidence to support the trial court's finding that the plaintiff acted as a subcontractor of Greenwich Design when it constructed and installed the septic system. Consequently, the defendant cannot prevail on his special defense alleging a violation of the act because the act is inapplicable to agreements, such as the one at issue in the present case, between a subcontractor and a homeowner. In view of the inapplicability of the act, the defendant's CUTPA claim also must fail because that claim is predicated entirely upon the plaintiff's alleged violation of the act.

The judgment is affirmed.

In this opinion the other justices concurred.

---

[13] We note that the defendant does not claim that the plaintiff's failure to provide notice of its intent to file a mechanic's lien pursuant to § 49-35 (a) rendered the lien invalid.