WILLIAM BLACKER, JR., ET AL. *v.* MARK S. CRAPO
(AC 28703)

McLachlan, Harper and Schaller, Js.

Argued December 3, 2008—officially released March 3, 2009

*James H. Lee*, for the appellant (defendant).

*Patrick E. Power*, for the appellees (plaintiffs).

McLACHLAN, J. The defendant contractor, Mark S. Crapo, appeals from the judgment of the trial court determining that he breached his contract with the plaintiff homeowners, William Blacker, Jr., and Terri Blacker, violated the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq., and committed a trespass against the plaintiffs. The defendant claims that the court improperly (1) concluded that he violated CUTPA, (2) concluded that he breached his contract with the plaintiffs and (3) found that he received a certified letter from the plaintiffs' attorney before beginning work on the plaintiffs' roof. We affirm the judgment of the trial court.

The plaintiffs commenced this action in October, 2005, with a three count complaint alleging (1) numerous violations of CUTPA, (2) breach of contract and (3) trespass. The defendant filed an answer, together with a claim of setoff and a counterclaim. In his claim of setoff and counterclaim, the defendant alleged that the plaintiffs had breached their contractual obligations. The claims and counterclaim were tried to the court on January 18 and 23, 2007.

The court found the following undisputed facts. The plaintiffs hired the defendant to add a sunroom with screened windows to their home, to replace some siding and to install some windows and doors. When the parties first met in April, 2004, the plaintiffs indicated to the defendant that they wanted work to start in June, 2004. Approximately one week after the contract was signed in June, 2004, the plaintiffs gave the defendant three checks totaling $23,000 as a deposit on the contract price of $84,758.[1]

---

[1] The defendant asked the plaintiffs for three checks in the amounts of $8000, $8000 and $7000. In 2004, the defendant had a business account at his bank but did not deposit the checks into his account, choosing instead to present each check for cash at the plaintiffs' bank in the same town, on June 23, 24 and 29, 2004.

No work was performed by the defendant in 2004, and, after numerous discussions, the parties executed an "Additional Work Authorization/Change Order" on May 3, 2005, adding to the defendant's repair work and increasing the contract price to $103,686. Still, no work was performed by the defendant. On July 15, 2005, the plaintiffs' attorney sent two copies of a letter, by regular and certified mail, to the defendant, stating that the plaintiffs considered the defendant to be in breach of their agreement and demanding the return of their deposit. The letter further stated that all communications should be directed to the plaintiffs' attorney and that any entry by the defendant onto the plaintiffs' property would be considered a trespass.[2] On July 18, 2005, the defendant and his employee, Ryan Basso, arrived at the plaintiffs' home and began ripping shingles off the roof.

The court found William Blacker's testimony credible, noting that he responded to questions naturally and credibly, and that he was honest, guileless and patient.[3] The court also found that the defendant was untruthful, evasive and manipulative of both facts and people and that his testimony "was evasive and *not at all credible*." (Emphasis added.) The court stated that the defendant's "lack of honesty so permeated his testimony that the court disbelieves all of his testimony regarding the date of the original contract, that it was okay with the [plaintiffs] that he not begin work on their home until July

---

[2] The court found, in response to the defendant's counterclaim, that the plaintiffs had more than sufficient cause and justification to order the defendant off of their property, the plaintiffs were not in breach of contract, the defendant was responsible for any damages he suffered by starting the roof work, the defendant's conduct on July 18, 2005, was wilful and unprofessional and, therefore, the defendant was not entitled to any recovery under the contract.

[3] The court made no explicit credibility determination as to Terri Blacker, whose testimony was largely cumulative of William Blacker's testimony.

18, 2005, or his explanation of different start and completion dates on various versions of the contract and change orders."

The court then made the following relevant factual findings. The operative contract was plaintiffs' exhibit one, executed June 12, 2004.[4] The contract included a typed start date of August, 2004, which was struck at a later time and a handwritten notation added: "On or around July 1st 2005 (June 15th at the soonest)." That notation was written with a different ballpoint pen from that used for the signatures dated June 12, 2004. William Blacker testified that he made it known in June, 2004, that he wanted the work to start as soon as possible, with most of it completed before winter, a reasonable expectation considering the date of the contract and the amount of the deposit required. Plaintiffs' exhibit two is not the original agreement; it lacks the plaintiffs' signatures on page one and lacks the defendant's signature on page two.

The court also found that the parties contracted for the sale of consumer goods and services and that the transaction was a "home solicitation sale" as provided by General Statutes § 42-134a. The defendant failed to provide the notices of cancellation required by the

---

[4] The plaintiffs entered two contracts as full exhibits, plaintiffs' exhibits one and two. The defendant also entered two contracts as full exhibits, defendant's exhibits one and two.

The pair of exhibits one are copies of the same "Proposal/Contract," evidently executed in duplicate by the plaintiffs and the defendant. Plaintiffs' exhibit one consists of only one page, signed and dated June 12, 2004, by all three parties. Defendant's exhibit one consists of two pages; the first page is signed and dated June 12, 2004, by all three parties, and the second page is signed and dated June 12, 2004, by the plaintiffs only.

Similarly, the pair of exhibits two were both copies of another "Proposal/Contract." Plaintiffs' exhibit two bears the defendant's signature dated June 12, 2004, on only page one and the plaintiffs' signatures dated May 3, 2005, on only page two. Defendant's exhibit two contains all three signatures on the first page, but only the defendant's signature is dated June 12, 2004, and only the plaintiffs' signatures dated June 12, 2004, are on the second page.

Home Solicitation Sales Act, General Statutes § 42-134a et seq. A two line notice provided in plaintiffs' exhibit one did not advise the plaintiffs of that which they were required to execute and to deliver to the defendant if they wanted to cancel the contract, and it did not advise them that they would receive a refund of their deposit upon timely cancellation. No notice of cancellation was left with the plaintiffs in June, 2004.

Moreover, the court found that the defendant received the letter from the plaintiffs' attorney by regular mail on either July 16 or 18, 2005. There was no other explanation for the defendant's sudden appearance at the plaintiffs' home, without any notice, shortly before his plans to travel to Latvia for one week. The defendant's receipt of the letter also was corroborated by the deposition testimony of Basso. Basso testified that the defendant stated more than once during the morning of July 18, 2005, that upon arrival at the plaintiffs' house, they should immediately get on the roof and start ripping off shingles because the defendant believed that the plaintiffs wanted to back out of the contract and once the job was started, the plaintiffs could no longer do so. In addition, the defendant and Basso continued to work after William Blacker came out of the house on July 18, 2005, and told the defendant to get off his roof and property and stated that the plaintiffs' attorney had written the defendant a letter. After police responded to William Blacker's call, they arrived to find both men still on the roof and William Blacker yelling at them to come down. The defendant denied receiving any letter and explained his refusal to stop work by stating that there was "weather coming in" and he had a "job to do." William Blacker told the police officer that he did not want the defendant arrested but that he did not want the defendant to continue to remove shingles and that he wanted the unprotected roof covered. The defendant did not stop working "until dark"

and continued to remove shingles from the roof and unload equipment from his truck onto the plaintiffs' property. In addition, the defendant left piles of debris on the plaintiffs' lawn.

Furthermore, the court found that the defendant "came to the home when he did knowing [that William Blacker] believed him [to be] in breach of the contract and, once convinced [that William Blacker's] patience had finally been exhausted, [the defendant's] refusal to stop work was an effort to 'save' a contract [William Blacker] no longer wished to honor." The defendant's insistence that he did not receive the letter prior to beginning work was not credible in light of his impending trip to Latvia the following week, his failure to give the plaintiffs notice that he intended to start work on their home, his conduct on July 18, 2005, including his instructions and statements to Basso and his refusal to stop work when first William Blacker and then a police officer instructed him to leave the property.

Additionally, the court found that the defendant struck the original start date of "August 2004" on the contract after the parties agreed on the change order on May 3, 2005. The defendant then added the June and July, 2005 start dates and a completion date of August, 2005, because no work had been started. The plaintiffs expected that work would begin after they paid the defendant $23,000 in June, 2004. The defendant had no credible excuse for not beginning work in 2004, which was unreasonable because he retained the deposit. The defendant breached his contract with the plaintiffs, and, by "any objective standard," the time to cure had expired by July 18, 2005. The plaintiffs could be compensated only by a return of the full amount of the deposit.

Finally, the court found that the defendant's breach of contract was accompanied by additional actions and

circumstances that established CUTPA violations. The defendant deceived the plaintiffs into believing that the work would be done on the schedule they desired but did not begin work until more than one year had passed. Even after that time, and after they had to contract with another person to complete the roof the defendant opened, the defendant withheld the plaintiffs' deposit. The plaintiffs initially contacted the defendant in response to his advertisement, and the resulting transaction, a home solicitation sale, made his conduct violations of both the Home Solicitation Sales Act and the Home Improvement Act, General Statutes § 20-418 et seq. The defendant's conduct in violating both statutes and in failing to return the plaintiffs' deposit was offensive to Connecticut's expressed commitment to shield consumers from the "deceitful and high-handed, high-pressure tactics" the defendant used on July 18, 2005.

Accordingly, the court rendered judgment in favor of the plaintiffs on all of the claims and the counterclaim. On the first count, the court awarded the plaintiffs $23,000 with statutory interest of 10 percent from July 16, 2005, until the date of payment. On the second count, the court awarded punitive damages of $10,000 and costs to the plaintiffs.[5] On the third count, the court ordered the defendant to pay nominal damages of $1.

I

The defendant first claims that the court improperly concluded that he violated CUTPA. Specifically, the defendant claims that the court improperly found that he had not provided the plaintiffs with a notice of cancellation rights as required by General Statutes § 42-135a (2).[6] We disagree.

---

[5] The court awarded attorney's fees of $5000 on April 2, 2007, after an additional hearing.

[6] The defendant also challenges the court's findings that he (1) breached his contract with the plaintiffs, (2) deceived the plaintiffs about when he would complete work under the contract and (3) refused to return the plaintiffs' deposit within ten days of their demand. The defendant, however,

William Blacker testified at trial that he did not recall the defendant's giving him or Terri Blacker a notice of cancellation in June, 2004. He testified, however, that the defendant brought a notice of cancellation on May 3, 2005, "because [the plaintiffs] didn't get it the year before." William Blacker testified that plaintiffs' exhibit four was the notice of cancellation that he received on May 3, 2005. Additionally, he testified that he had written "6/12/04" on the notice because that was the date the defendant wrote above, but then noted "(5/3/05)" in pencil next to that because he "wanted to write the date down that [he] actually signed it." Furthermore, he testified that he believed he wrote "6/12/04" on May 3, 2005, but was not positive. William Blacker also testified that plaintiffs' exhibit four was the "pink copy" of a multilayer form. Defendant's exhibit three contains the white and yellow copies of the notice of cancellation. After comparing both exhibits, William Blacker testified that the pink copy did not have his original signature but a "carbon" copy that had carried down from the top layer. He testified that his and Terri Blacker's original signatures were on defendant's exhibit three. William Blacker testified that the white and yellow copies contained only the date "6/12/04" because he wrote "5/3/05" on the pink copy when he received it from the defendant on May 3, 2005.

Terri Blacker testified that she did not recall ever receiving a notice of cancellation in June, 2004. She

failed to provide appropriate references to facts and legal analysis. See Practice Book § 67-4 (d). "[W]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failing to brief the issue properly. . . . It is not the role of this court to undertake the legal research and analyze the facts in support of a claim or argument when it has not been briefed adequately." (Citations omitted; internal quotation marks omitted.) *Mundell* v. *Mundell*, 110 Conn. App. 466, 478, 955 A.2d 99 (2008). Accordingly, we decline to review these claims.

testified that she remembered receiving a notice of cancellation only on May 3, 2005, despite the fact that it is dated June 12, 2004. Terri Blacker testified that her original signature was on the white copy and that when she signed it, the only date present was June 12, 2004. Terri Blacker also testified that the top two copies were kept by the defendant.

The defendant testified that the white, yellow and pink sheets were together when they were signed by the plaintiffs on June 12, 2004. The defendant also testified that after it was signed, he tore off the pink copy and gave it to the plaintiffs. Finally, the defendant testified that he retained physical possession of the white and yellow copies until trial.

The court stated in its memorandum of decision that credibility determinations greatly influenced the court's findings and orders. The court found William Blacker credible and stated that his "testimony that no [n]otice of [c]ancellation was left with him in June of 2004 [established] . . . a violation of [§ 42-135a (2)]." Additionally, the court found the defendant "evasive and *not at all credible.*" (Emphasis added.) Thus, the court found that the defendant violated the Home Solicitation Sales Act and consequently the Home Improvement Act and CUTPA.[7]

The court's finding that the defendant failed to provide the plaintiffs with a notice of cancellation is subject to a clearly erroneous standard of review.[8] "Appellate

---

[7] General Statutes § 42-141 (b) provides in relevant part: "Violation of any of the provisions of sections 42-135a . . . or failure to honor any provisions of the notice of cancellation required by this chapter shall constitute an unfair or deceptive act or practice as defined by [CUTPA]."

[8] The defendant does not challenge the legal conclusion that his transaction with the plaintiffs was subject to the Home Improvement Act and the Home Solicitation Sales Act. Nor does he challenge the legal conclusion that a failure to provide any notice of cancellation constitutes a violation of those acts. The defendant challenges only the factual finding of the court that he failed to provide such a notice.

review of a trial court's findings of fact is governed by the clearly erroneous standard of review. The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . We cannot retry the facts or pass on the credibility of the witnesses. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *In re Francisco R.*, 111 Conn. App. 529, 535–36, 959 A.2d 1079 (2008). The court, as the sole arbiter of credibility, is "free to accept or reject, in whole or in part, the testimony offered by either party." (Internal quotation marks omitted.) *Somers* v. *Chan*, 110 Conn. App. 511, 530, 955 A.2d 667 (2008).

The defendant challenges the court's findings regarding his violation of the Home Improvement Act. General Statutes § 20-429 (a) of the Home Improvement Act provides in relevant part that "[n]o home improvement contract shall be valid or enforceable against [a homeowner] unless it: (1) [i]s in writing, (2) is signed by the owner and the contractor, (3) contains the entire agreement between the owner and the contractor, (4) contains the date of the transaction, (5) contains the name and address of the contractor and the contractor's registration number, (6) contains a notice of the owner's cancellation rights in accordance with the provisions of [the Home Solicitation Sales Act], (7) contains a starting date and completion date, and (8) is entered into by a registered salesman or registered contractor. . . ." "Because § 20-429 (a) (6) incorporates the provisions of the [Home Solicitation Sales Act] by reference, it is also necessary to consider those provisions. The

section of the [Home Solicitation Sales Act] that pertains to notice of cancellation is § 42-135a. That section provides in relevant part that it is the *duty of the seller of the services to furnish [to] each buyer . . . a completed form in duplicate, captioned NOTICE OF CANCELLATION, which shall be attached to the contract . . .* and to complete both copies of the latter form, before furnishing them to the buyer, by entering [onto the forms] the name of the seller, the address of the seller's place of business, the date of the transaction, and the date, not earlier than the third business day following the date of the transaction, by which the buyer may give notice of cancellation. . . . Thus, the plain language of these sections requires home improvement contractors to furnish two copies of the notice of cancellation to the homeowners with whom they contract to undertake home improvement services by attaching two copies of the notice to the back of the homeowner's copy of the contract and that each of the copies specifies the date of the transaction and the date by which the contract may be canceled. . . .

"In construing § 20-429 (a), this court consistently has held that the requirements of that section are mandatory and that a contractor is precluded from enforcing a home improvement contract that does not satisfy its requirements." (Emphasis added; internal quotation marks omitted.) *Wright Bros. Builders, Inc.* v. *Dowling,* 247 Conn. 218, 227–28, 720 A.2d 235 (1998).

The defendant claims that the court improperly found that he failed to provide the plaintiffs with the notice of cancellation rights required by the Home Solicitation Sales Act. The defendant argues that the evidence does not support this finding because (1) each party put its copy of the notice of cancellation into evidence, (2) the notices of cancellation in evidence were dated June 12, 2004, (3) William Blacker testified that the plaintiffs may have seen the forms on June 12, 2004, but he could

not find one and the defendant brought the pink copy to his house on May 3, 2005, and (4) Terri Blacker did not testify that she had not received a notice on June 12, 2004, but only that she did not recall receiving one. The defendant thus argues that "the plaintiffs' testimony was not that they had not been given the notice of [cancellation] in June, 2004, but that they did not remember. This is not enough to support a finding that they had not been given the notice." We disagree.

The court's finding was well supported by the plaintiffs' testimony. The court had before it evidence that the defendant had withheld the three signed copies of the notice of cancellation until May 3, 2005. The plaintiffs testified that they did not recall receiving a copy of the notice of cancellation on June 12, 2004, the defendant testified that there were three copies of the original notice of cancellation and that he kept two of the copies until the date of trial, the plaintiffs testified that they received the pink copy on May 3, 2005, and the pink copy carried the date May 3, 2005, written next to the date June 12, 2004. The court was free to disbelieve the defendant's testimony that he presented the plaintiffs with the pink copy on June 12, 2004,[9] and to believe that the plaintiffs had not received that copy until May 3, 2005. See *Somers* v. *Chan*, supra, 110 Conn. App. 530. The evidence before the court was sufficient to sustain the court's finding that the plaintiffs received no notice of cancellation rights in June, 2004. We cannot say that "there is no evidence in the record to support it . . . [or that we are] left with the definite and firm

---

[9] The defendant argues in his reply brief that the court could have determined, under the reasoning of *Wright Bros. Builders, Inc.*, that at least one but fewer than four copies of the notice of cancellation were sufficient to satisfy § 42-135a (2). Because we conclude that the court's finding that no notice of cancellation was received in June, 2004, was not clearly erroneous, we decline to address his argument.

conviction that a mistake has been committed." (Internal quotation marks omitted.) *In re Francisco R.*, supra, 111 Conn. 535–36.

## II

The defendant also claims that the court improperly concluded that he breached his contract with the plaintiffs. Specifically, the defendant claims that the court improperly found that (1) the date for his performance was not changed by agreement and (2) time was of the essence. The plaintiffs assert that the court did not improperly conclude that the defendant committed a material breach of contract and, in the alternative, that the court's order of $23,000 plus interest[10] could be affirmed on the alternate ground that the contract was invalid and unenforceable against the plaintiffs under §§ 20-429 (a) (6) and 42-135a due to the defendant's failure to provide the plaintiffs with the required notice of cancellation. Having concluded in part I that the court properly found that the defendant failed to provide the plaintiffs with a notice of cancellation in June, 2004, we agree with the alternate ground suggested by the plaintiffs, and we need not address the court's analysis of the breach of contract.

"Where the trial court reaches a correct decision but on mistaken grounds, this court has repeatedly sustained the trial court's action if proper grounds exist to support it. *Morris* v. *Costa*, 174 Conn. 592, 597–98, 392 A.2d 468 (1978)." (Internal quotation marks omitted.) *Mortgage Electronic Registration Systems, Inc.* v. *Goduto*, 110 Conn. App. 367, 373, 955 A.2d 544, cert. denied, 289 Conn. 956, 961 A.2d 420 (2008). We "may affirm the court's judgment on a dispositive alternate ground for which there is support in the trial court

---

[10] The court set interest from the date it found "the defendant first learned of the plaintiffs' demand" for the return of their deposit. The defendant did not challenge the award of interest. In the absence of such a challenge, we will not review the propriety of the court's award of statutory interest.

record." (Internal quotation marks omitted.) *Webster Bank* v. *Oakley*, 265 Conn. 539, 553–54 n.14, 830 A.2d 139 (2003), cert. denied, 541 U.S. 903, 124 S. Ct. 1603, 158 L. Ed. 2d 244 (2004). Affirmance on alternate grounds is possible, however, only when the "result is required by law." *Shaw* v. *L. A. Socci, Inc.*, 24 Conn. App. 223, 227, 587 A.2d 429 (1991).

As we noted previously, § 42-135a required the defendant to provide the plaintiffs with notice of cancellation, completed in duplicate, at the time of the execution of the home solicitation sale agreement. Section 42-135a provides that unless that requirement is satisfied, "[n]o agreement in a home solicitation sale shall be effective against the buyer . . . ." Accordingly, the plaintiffs' letter to the defendant indicated their intention not to be bound by the home solicitation sale and created in the defendant the responsibility to return the plaintiffs' deposit.[11] This conclusion necessarily follows from the court's findings that (1) the defendant failed to provide the plaintiffs with the required notice of cancellation,

---

[11] Because a homeowner may lose the protection of the Home Improvement Act if he or she invokes it in bad faith, "[o]rdinarily, a new trial would be required to afford the [contractor] the opportunity to prove that the [homeowner] repudiated the contract in bad faith. The bad faith exception, however, is intended to preclude a homeowner from unfairly invoking the [Home Improvement Act] [t]o deny the contractor any opportunity of recovery after he has completed his end of the bargain. . . . Because the bad faith exception may not be used by a contractor to recover on a restitutionary theory when . . . the contractor has not performed any of the home improvement services contemplated by the contract, the [contractor] cannot recover even if it can establish that the [homeowner] repudiated the contract in bad faith." (Citations omitted; internal quotation marks omitted.) *Rizzo Pool Co.* v. *Del Grosso*, 232 Conn. 666, 681–82, 657 A.2d 1087 (1995).

Thus, because the defendant performed work on the plaintiffs' roof only after he received notice that they would not be bound by the agreement, no remand is required in this case. We also note that the court found that the plaintiffs had more than sufficient cause and justification to order the defendant off of their property and that his damages, if any, "were as a result of his own undertaking of the roof work when told he was to leave the property, conduct that was wilful and unprofessional."

(2) the plaintiffs gave the defendant a $23,000 deposit in June, 2004, (3) the plaintiffs requested their deposit back from the defendant in July, 2005, because of the defendant's failure to begin work after more than thirteen months from the original start date, (4) the defendant had not returned the deposit as of the date of judgment and (5) the plaintiffs could be made whole only by the defendant's return of the deposit.

## III

Finally, the defendant claims that the court improperly found that "the defendant had received the plaintiffs' attorney's certified letter of July 15, 2005 by regular mail on the 16th or the morning of the 18th . . . and the conclusions that depend on it must fall."[12] Specifically, the defendant claims that the court's findings that (1) he had received the letter via regular mail either on July 16, 2005, or the morning of July 18, 2005, and (2) the defendant's and his wife's testimony that they did not receive the letter via certified mail until the afternoon of July 18, 2005, was not credible are clearly erroneous.

The court found, "[the defendant's] protestations to the contrary, that [the defendant] received counsel's

---

[12] The defendant makes no reference in his argument to which conclusions must fall, but we find the necessary reference in his conclusion: "On the third count, the judgment should be reversed because the supporting finding that the defendant had received counsel's letter is itself unsupported by the evidence." Thus, we construe the defendant's challenge to be directed at the third count.

Because the defendant has provided no further analysis, he has abandoned challenges to the court's other legal conclusions that may have found their support in the challenged factual findings. "[W]e are not required to review claims that are inadequately briefed. . . . We consistently have held that [a]nalysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . Where the parties cite no law and provide no analysis of their claims, we do not review such claims. . . . We decline, therefore, to review the plaintiff's claims and deem them abandoned." (Internal quotation marks omitted.) State v. Linarte, 107 Conn. App. 93, 104–105 n.6, 944 A.2d 369, cert. denied, 289 Conn. 901, 957 A.2d 873 (2008).

letter by regular mail either on Saturday, July 16, 2005, (when [William Blacker] received his copy) or early on the morning of Monday, July 18, 2005." When addressing the plaintiffs' third count, however, the court stated that "[a] fair reading of the third count makes clear [that] the plaintiffs *base their cause of action in trespass on the defendant's refusal to leave the property once requested to leave by both [William Blacker] and the investigating officer.*" (Emphasis added.) The court, therefore, addressed the plaintiffs' trespass claim solely on that ground. Thus, whether or not the challenged finding is clearly erroneous, it is not material to the challenged conclusion. See *Colliers, Dow & Condon, Inc.* v. *Schwartz*, 88 Conn. App. 445, 446 n.2, 871 A.2d 373 (2005). The defendant has not challenged any of the factual findings on which the court decided the trespass claim and has not otherwise challenged the court's legal conclusions. Accordingly, even if we assume that the court's finding is clearly erroneous, we can offer no relief.

The judgment is affirmed.

In this opinion the other judges concurred.