## NABIL S. BAHJAT ET AL. *v.* AHMED A. DADI
## (AC 30252)

DiPentima, C. J., and Gruendel and McDonald, Js.

Argued April 6—officially released August 3, 2010

*John A. Barbieri*, with whom was *Claudia Barbieri*, for the appellants-appellees (plaintiffs).

*Ahmed A. Dadi*, pro se, the appellee-appellant (defendant).

*Opinion*

DiPENTIMA, C. J. The plaintiffs, Nabil S. Bahjat and Barbara Bahjat, appeal from the judgment of the trial court, rendered after a court trial, in favor of the defendant Ahmed A. Dadi[1] on counts two and three of the operative complaint. The plaintiffs claim that the court improperly (1) found that the defendant was exempt from the registration requirement for home improvement contractors pursuant to General Statutes § 20-420, and (2) failed to award damages to the plaintiffs pursuant to General Statutes § 42-110a et seq., the Connecticut Unfair Trade Practices Act (CUTPA), and General Statutes § 20-418 et seq., the Home Improvement Act (act). The defendant cross appeals from the judgment rendered in favor of the plaintiffs on count one of their complaint, claiming that the court improperly awarded the plaintiffs damages for breach of contract. We affirm the judgment of the trial court.

The following facts and procedural history were found by the court. In 2002, the plaintiffs met with the defendant, a licensed professional engineer, and asked him to draft plans for an addition to their existing house, consisting of a garage and a second floor room over

---

[1] The defendant is Dadi, doing business as Total Design/Dadi Associates, which is a company owned and operated solely by Dadi. We refer to Dadi as the defendant throughout this opinion.

the garage. After the plans were drafted, the plaintiffs hired the defendant to apply to the town of Farmington for a building permit and to obtain the necessary side yard variances. Subsequently, the plaintiffs negotiated with the defendant to have the addition constructed. The defendant drew up a contract, which he and Nabil Bahjat executed on December 23, 2002. The contract contained, inter alia, a minimum price of $60,000, a payment schedule and a completion date of April 30, 2003.

As of May 6, 2003, the plaintiffs had made payments to the defendant totaling $43,500, and the foundation had not yet been completed. On August 16, 2003, the first delivery of framing materials arrived. By early October, 2003, when the framing and underlayment was in place, subcontractors and materials providers informed the plaintiffs that they had not been paid by the defendant and would not proceed with construction until they were paid. The plaintiffs then informed the defendant that they would take over the payments to the subcontractors and materials providers directly and would also deal with them directly to keep construction moving along. Thereafter, the plaintiffs made no further payments to the defendant but made payments totaling $29,425 directly to the subcontractors and materials providers.

The plaintiffs brought an action against the defendant, alleging breach of contract and violations of CUTPA and the act. The plaintiffs claimed that the defendant's failure to complete the construction by the contract completion date of April 30, 2003, and his failure to pay the subcontractors and materials suppliers constituted a substantial breach of the parties' contract, resulting in monetary damages. On May 1, 2007, the defendant filed an answer and counterclaim, alleging that the plaintiffs breached the contract by failing to pay the remaining balance of the contract.

Following a trial before the court, the court issued a memorandum of decision, rendering judgment in favor of the plaintiffs on count one of their complaint for breach of contract and awarding damages in the amount of $12,925 plus court costs. The court also rendered judgment in favor of the plaintiff on all counts of the defendant's counterclaim. The court found that "no evidence was presented to support the defendant's argument that he performed additional services beyond what was called for in the contract, nor additional services beneficial to the plaintiffs at their request after [they] took over the completion of the contract." On counts two and three, alleging violations of CUTPA and the act, the court rendered judgment in favor of the defendant after having found him to be exempt from the registration requirement of § 20-420 on the basis of his registration and qualifications as a professional engineer.

The plaintiffs appealed from the judgment on counts two and three of their complaint, and the defendant cross appealed from the judgment on count one of the plaintiffs' complaint and on the counterclaim. Additional facts will be set forth where necessary.

I

The plaintiffs first claim that the court improperly found that the defendant was exempt from the registration requirement at § 20-420 for home improvement contractors. We do not agree.

Before addressing the merits of the plaintiffs' claim, we first determine the applicable standard of review. The issue of whether a home improvement service provider is acting as a contractor is a question of fact. See *Meadows* v. *Higgins*, 249 Conn. 155, 171–72, 733 A.2d 172 (1999). "A finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record. . . . A finding of

fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . In applying the clearly erroneous standard to the findings of a trial court, we keep constantly in mind that our function is not to decide factual issues de novo. Our authority, when reviewing the findings of a judge, is circumscribed by the deference we must give to decisions of the trier of fact, who is usually in a superior position to appraise and weigh the evidence. . . . The question for this court . . . is not whether it would have made the findings the trial court did, but whether in view of the evidence and pleadings in the whole record it is left with the definite and firm conviction that a mistake has been committed." (Citations omitted; internal quotation marks omitted.) *MJM Landscaping, Inc.* v. *Lorant,* 268 Conn. 429, 436–37, 845 A.2d 382 (2004).

Section 20-420 (a) provides in relevant part: "No person shall hold himself or herself out to be a contractor or salesperson without first obtaining a certificate of registration from the commissioner as provided in this chapter. . . ." The court rendered judgment in favor of the defendant on counts two and three of the complaint, finding that he was exempt from the registration requirement of § 20-420 because he is registered as a professional engineer.

General Statutes § 20-428 lists exemptions from registration as a home improvement contractor under the act. It provides in relevant part: "This chapter shall not apply to any of the following persons or organizations . . . (4) any person holding a current professional or

occupational license issued pursuant to the general statutes . . . provided such person engages only in that work for which such person is licensed . . . ."[2]

A professional engineer is statutorily defined as "a person who is qualified by reason of his knowledge of mathematics, the physical sciences, and the principles of engineering, acquired by professional education and practical experience, to engage in engineering practice, including rendering or offering to render to clients any professional service such as consultation, investigation, evaluation, planning, design or *responsible supervision of construction*, in connection with any public or privately-owned structures, buildings, machines, equipment, processes, works or projects in which the public welfare or the safeguarding of life, public health or property is concerned or involved . . . ." (Emphasis added.) General Statutes § 20-299 (1).

---

[2] The court found that the defendant was exempt from registration pursuant to General Statutes § 20-298. Section 20-298, which sets forth the activities that are exempt from the provisions of the statutes pertaining to the licensing of architects, provides: "The following activities are exempted from the provisions of this chapter: (1) The practice of engineering by a professional engineer licensed under the provisions of chapter 391, and the performance by such professional engineer of architectural work for which such professional engineer is qualified by education and experience and which is incidental to such professional engineer's engineering work; (2) the construction or alteration of a residential building to provide dwelling space for not more than two families, or of a private garage or other accessory building intended for use with such residential building . . . (8) the making of plans and specifications for or supervising the erection of any building, any building addition or any alteration to an existing building, where the building, including any addition, contains less than five thousand square feet total area . . . ."

We find that the statutory route intended by the legislature to exempt a licensed engineer such as the defendant, from registration, however, is § 20-428. "Where the trial court reaches a correct decision but on mistaken grounds, this court has repeatedly sustained the trial court's action if proper grounds exist to support it. . . . We may affirm the court's judgment on a dispositive alternate ground for which there is support in the trial court record." (Citations omitted; internal quotation marks omitted.) *Blacker* v. *Crapo*, 112 Conn. App. 795, 808–809, 964 A.2d 1241, cert. denied, 291 Conn. 915, 970 A.2d 727 (2009).

The plaintiffs claim that the work that the defendant did on their property does not fall within his licensing as a professional engineer. They assert that his work in this case required different skills and expertise than his engineer license reasonably contemplated, and, therefore, his work on their property should fall outside of the exemption and require that he seek an *additional* registration as a home improvement contractor. We are not persuaded. The defendant testified that he is a civil, mechanical and electrical engineer who has been licensed with the state as a professional engineer since 1970. He also testified that this license qualifies him to do civil, mechanical, electrical and up to 5000 square feet of architectural work on the basis of his experience and qualifications. The defendant and the plaintiffs agree that the size of the addition was well below 5000 square feet. The defendant testified that he previously had supervised construction similar to that done in this case in his capacity as a professional engineer. He further testified specifically regarding his level of involvement in the drafting of plans, construction and supervision of construction.

We conclude that the court's finding that the defendant acted as a licensed professional engineer in drawing up the plans and responsibly supervising construction for the addition to the plaintiffs' house was not clearly erroneous. Consequently, the plaintiffs cannot prevail on their claim alleging a violation of the act because the act is inapplicable to licensed professional engineers such as the defendant. General Statutes § 20-428. Additionally, on the basis of the inapplicability of the act, the plaintiffs' CUTPA claim must fail because that claim is predicated entirely on the defendant's alleged violation of the act. See *MJM Landscaping, Inc.* v. *Lorant*, supra, 268 Conn. 440.

II

Next, we address the defendant's cross appeal, claiming that the court improperly awarded the plaintiffs

damages for breach of contract. The defendant asserts that the court's findings that the defendant was in substantial breach of the parties' contract and that the plaintiffs made payments totaling $29,425 directly to the subcontractors and materials suppliers to complete the construction, were contrary to the evidence. We do not agree.

As we previously stated, under the applicable standard of review, we uphold factual findings unless they are clearly erroneous. Id., 436–37. The court found that "the contract was in effect, and the plaintiffs made the various payments as requested by the defendant, amounting to $43,500 through May 6, 2003. The work on the addition moved at an extremely slow pace [despite] efforts on the part of the plaintiffs to have the defendant move the construction along. As of May 6, 2003, the foundation work was not completed; the first delivery of framing materials to the job site was August 16, 2003. By early October, 2003, the framing and underlayment was in place when the subcontractors informed the plaintiffs that they were not being paid by the defendant and would not proceed with construction until they were paid. Other nonpayment issues arose with the material providers, and one placed a lien on the plaintiffs' property. The plaintiffs then informed the defendant that they would take over the payments directly to the subcontractors and materials suppliers and would deal directly with them to keep the construction proceeding." The court further found that as of October 1, 2003, "[s]ubstantial construction work remained to be completed, and the work had stopped because of the defendant's nonpayment to workers and suppliers. This was a substantial breach of the parties' contract." The court determined, on the basis of the evidence of payments and construction completed, that the plaintiffs had suffered $12,925 in damages.

Upon a review of the record, we determine that there was sufficient evidence for the court to make the finding that the defendant breached his contract with the plaintiffs and that they suffered damages. The contract was admitted into evidence, and both of the plaintiffs as well as the defendant testified at length regarding the contract, the payments received and the work completed by the defendant and subcontractors throughout the following months. "In a case tried before a court, the trial judge is the sole arbiter of the credibility of the witnesses and the weight to be given specific testimony. . . . It is within the province of the trial court, as the fact finder, to weigh the evidence presented and determine the credibility and effect to be given the evidence." (Internal quotation marks omitted.) *Connecticut Education Assn., Inc.* v. *Milliman USA, Inc.,* 105 Conn. App. 446, 454, 938 A.2d 1249 (2008). On the basis of the evidence before the court, we conclude that the court's determination that the defendant breached the contract was not clearly erroneous.

The judgment is affirmed.

In this opinion the other judges concurred.